Patrick L. GALLAGHER,
Plaintiff–Appellee,

v.

RELIANCE STANDARD LIFE
INSURANCE COMPANY,
Defendant–Appellant.

No. 01–2467.

United States Court of Appeals,
Fourth Circuit.

Argued June 5, 2002.

Decided Sept. 25, 2002.

**ARGUED;** Joshua Bachrach, Rawle & Henderson, L.L.P., Philadelphia, Pennsylvania, for Defendant–Appellant. Edward G. Connette, III, Lesesne & Connette, Charlotte, North Carolina, for Plaintiff–Appellee.

Before WILLIAMS and GREGORY, Circuit Judges, and FREDERICK P. STAMP, JR., United States District Judge for the Northern District of West Virginia, sitting by designation.

Reversed and remanded with instructions by published opinion. Judge WILLIAMS wrote the opinion, in which Judge GREGORY and Judge STAMP joined.

**OPINION**

WILLIAMS, Circuit Judge.

Reliance Standard Life Insurance Company (Reliance) appeals the district court's entry of summary judgment in favor of Patrick L. Gallagher in this action for wrongful denial of benefits under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. § 1001 et seq. (West 2001). The issues on appeal are (1) whether the district court erred in applying an abuse of discretion standard to Reliance's decision to deny benefits and (2) whether the district court erred by reversing Reliance's decision to deny benefits and entering summary judgment in Gallagher's favor. We conclude that Reliance's decision to deny benefits to Gallagher is subject to de novo review and uphold Reliance's decision under this standard of review. Accordingly, we reverse the district court's entry of summary judgment in Gallagher's favor and remand for entry of judgment in Reliance's favor.

I.

Gallagher worked as a corporate officer and publisher for Goodwill Publishing, Inc. (GWP) for 26 years. His job required three to four hours a day of sedentary work, such as word processing, and some international travel. Gallagher suffered on and off from back pain during most of the time he was employed by GWP. In 1986, Gallagher sought medical treatment for pain in his lumbar spine. When his condition did not improve, he underwent a suction discectomy. The surgery improved Gallagher's condition, but walking, standing, and sitting remained difficult. In 1990, Gallagher began treatment at the Key Biscayne Medical Clinic and eventually took a leave of absence to enroll in a six-week rehabilitation program. During this time, Gallagher began to suffer nerve pain in his neck and left arm and was diagnosed with diffuse degenerative disc disease, disc herniation, and spurring on the facets[1] throughout his lumbar spine. In 1997,

---

1. A facet is small plane surface on the bone. *Dorland's Illustrated Medical Dictionary* 642 (29th ed.2000).

Gallagher's cervical spine pain became "severe." (J.A. at 936.) Dr. Eismont, a neurosurgeon, diagnosed Gallagher as suffering from arthritic changes and stenosis.[2] Because of the pain caused by his chronic back condition, Gallagher resigned from his job on May 2, 1998.

Gallagher is covered by GWP's long-term disability policy (the Plan), an employee welfare benefit plan governed by ERISA and funded by Reliance. GWP is the Plan Administrator, and Reliance is a fiduciary with responsibility for making claims determinations. On July 10, 1998, GWP forwarded Gallagher's disability benefit application to Reliance. On February 2, 1999, Reliance denied Gallagher's claim because it determined that his medical condition did not meet the definition of total disability under the Plan. On February 25, 1999, the Social Security Administration found Gallagher to be totally disabled under the Social Security regulations. On June 3, 1999, Gallagher requested Reliance to review the denial of his disability benefits under the Plan and submitted additional materials to support his claim. On October 13, 1999, Reliance, after conducting an independent review, determined that denial of benefits was appropriate based on Gallagher's failure to satisfy the definition of total disability. Specifically, Reliance concluded that Gallagher could perform one or more of the material duties of his regular occupation. Having exhausted his administrative remedies, Gallagher initiated this ERISA action in the United States District Court for the Western District of North Carolina. The district court con-

cluded that Reliance had abused its discretion and entered summary judgment in favor of Gallagher. Reliance filed a timely notice of appeal.

## II.

We examine the district court's grant of summary judgment de novo, applying the same legal test as the district court. *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 605 (4th Cir.1999). It is well-established that a court reviewing the denial of disability benefits under ERISA initially must decide whether a benefit plan's language grants the administrator or fiduciary discretion to determine the claimant's eligibility for benefits, and if so, whether the administrator acted within the scope of that discretion. *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir.2000); *see also Johannssen v. District No. 1—Pacific Coast District*, 292 F.3d 159, 168 (4th Cir.2002) (explaining that if the language of the plan grants the administrator or fiduciary discretion to determine eligibility for benefits under the plan, the reviewing court determines whether a denial of benefits was an abuse of discretion).[3] No specific phrases or terms are required in a plan to preclude a de novo standard of review. *Feder*, 228 F.3d at 522 ("[I]f the terms of a plan indicate a clear intention to delegate final authority to determine eligibility to the plan administrator, then this Court will recognize discretionary authority by implication."). The plan's intention to confer discretion on the plan administrator or fiduciary, however, must be clear. *Sandy v. Reliance Standard Life Ins. Co.*, 222 F.3d 1202, 1207 (9th Cir.2000) ("Nei-

---

2. Stenosis is "an abnormal narrowing of a duct or canal." *Dorland's Illustrated Medical Dictionary* 1698 (29th ed.2000). In this case, it refers to a narrowing of the vertebral canal.

3. When a plan administrator or fiduciary with a conflict of interest is vested with discretion, the deference normally given under the abuse

of discretion standard is reduced "to the degree necessary to neutralize any untoward influence resulting from the conflict." *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 233 (4th Cir.1997) (citing *Bedrick v. Travelers Ins. Co.*, 93 F.3d 149 (4th Cir.1996)).

ther the parties nor the courts should have to divine whether discretion is conferred."). If a plan does not clearly grant discretion, the standard of review is de novo. *Feder,* 228 F.3d at 524. Any ambiguity in an ERISA plan "is construed against the drafter of the plan, and it is construed in accordance with the reasonable expectations of the insured." *Bynum v. Cigna Healthcare, Inc.,* 287 F.3d 305, 313–14 (4th Cir.2002). Of course, because de novo review is more rigorous, if a reviewing court upholds a benefits decision under de novo review, it also would uphold it under a deferential standard. *Feder,* 228 F.3d at 522 (explaining that under the deferential standard, the reviewing court should uphold an administrator's decision if it is reasonable, even if the court would have reached a different conclusion).

■■■■ With these principles in mind, we must determine whether the following language in the plan grants Reliance discretion to determine Gallagher's eligibility for benefits: "We will pay a Monthly Benefit if the Insured ... submits satisfactory proof of Total Disability to us." [4] (J.A. at 89.) There are two possible ways to interpret this language: (1) that Gallagher must submit to Reliance satisfactory proof of his disability or (2) that he must submit proof of his disability that is satisfactory to Reliance. [5] The former interpretation would require Gallagher to submit to Reliance proof of a total disability that is objectively satisfactory; to determine whether Gallagher met this objective standard,

we would review Reliance's denial of his claim de novo. *Feder,* 228 F.3d at 523 (requirement that claimant submit written proof of disability and "proof to verify the continuance of any disability" establishes an objective standard); *see also Herzberger v. Standard Ins. Co.,* 205 F.3d 327, 332 (7th Cir.2000) (explaining that merely requiring claimant to submit proof or satisfactory proof does not create a subjective standard). The latter interpretation, however, would require Gallagher to submit to Reliance proof of a total disability that Reliance finds subjectively satisfactory; to determine whether Gallagher met this subjective standard, we would review Reliance's denial of his claim for abuse of discretion. *Bernstein v. CapitalCare Inc.,* 70 F.3d 783, 788 (4th Cir.1995) (concluding that an agreement gave discretion to the administrator because it provided that benefits would be paid out only if the administrator determined that certain conditions are met). We conclude that the language of the Plan does not grant Reliance discretionary authority. First, as noted above, a grant of discretion must be clear. *Sandy,* 222 F.3d at 1204 ("No matter how you slice it, requiring a claimant to submit 'satisfactory proof' does not unambiguously confer discretion ...."); *see also Perugini–Christen v. Homestead Mortgage Co.,* 287 F.3d 624, 626 (7th Cir. 2002) ("Because it is not clear from the plain language which interpretation is the correct one, ... Reliance failed to reserve discretionary authority."); *Kinstler v.*

---

**4.** The Plan's insuring clause, in its entirety, reads as follows:

We will pay a Monthly Benefit if an Insured:

(1) is Totally Disabled as the result of a Sickness or Injury covered by this policy;

(2) is under the regular care of a Physician unless the insured has reached the maximum point in his/her recovery where medical services will no longer help him/her;

(3) has completed the Elimination Period; and

(4) submits satisfactory proof of Total Disability to us.

(J.A. at 89.)

**5.** At oral argument, Reliance stated that it has changed its policy language to make it clear that it has discretion to determine coverage, but this change has no effect on the disposition of this case.

*First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 252 (2d Cir.1999) ("[T]he needless ambiguity in the wording of the policy should be resolved against First Reliance."). Second, an insured employee reading this language would most likely interpret "to us" as an indication of where to submit the proof, not as granting Reliance discretion to determine whether the proof was satisfactory. The prepositional phrase "to us," as written in the Plan, is more naturally read as modifying "submit" rather than "satisfactory."[6]

Accordingly, we hold that the proper standard of review of Reliance's denial of Gallagher's claim for benefits is de novo, and we must next determine whether the proof of total disability he submitted to Reliance was objectively satisfactory.

### III.

#### A.

■ Under the Plan, an insured employee is totally disabled when, as the result of an injury or sickness, the employee "cannot perform each and every material duty of his/her regular occupation" during the elimination period. (J.A. at 84.) An employee is unable to perform "each and every duty" if he is unable to perform "all the duties" of his regular occupation. *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 606 (4th Cir.1999). The elimination period under the Plan is defined as "90 consecutive days of Total Disability." (J.A. at 81.) Gallagher claims his disability began on May 2, 1998. The elimination period, therefore, ran from that date through August 1, 1998. Accordingly, to qualify for disability benefits, Gallagher must submit objectively satisfactory proof that he was unable to perform all the material duties of his regular occupation between May 2, 1998 and August 1, 1998. *Elliott*, 190 F.3d at 603 (noting that the burden of proving a disability is on the employee).

■ Where "regular occupation" is not defined in the Plan, the fiduciary must

**6.** We recognize that the district court likely concluded that the Plan granted Reliance discretion because this court, in an unpublished opinion, determined that the same language vested Reliance with discretionary authority. *Wilcox v. Reliance Standard Life Ins.*, 1999 WL 170411, at *2 (4th Cir.1999) (unpublished). Some of our sister circuits also have come to this conclusion. *See, e.g., Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir.1996) (concluding that a policy with identical wording gives Reliance discretion to determine eligibility). In *Yeager*, the Sixth Circuit concluded that "[e]ven if the phrase 'to us' is interpreted as defining to whom the proof should be submitted, there is no reason to believe that someone other than the party that received the proof would make a determination regarding its adequacy." *Id.* at 381. While it is true that Reliance must make a determination regarding whether a claimant has submitted satisfactory proof, this "implies nothing one way or the other about the scope of judicial review of [its] determination." *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 332 (7th Cir.2000). Rather, as discussed above, to confer discretionary powers the plan language must "indicate a clear intention to delegate final authority to determine eligibility." *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 523 (4th Cir.2000). Final authority to make eligibility determinations is not delegated by "the mere fact that a plan requires a determination of eligibility or entitlement by the administrator, or requires proof or satisfactory proof of the applicant's claim, or requires both a determination and proof (or satisfactory proof)." *Herzberger*, 205 F.3d at 332. Reliance's denial of Gallagher's benefits under the Plan, therefore, must be reviewed de novo. *See Perugini-Christen v. Homestead Mortgage Co.*, 287 F.3d 624, 627 (7th Cir.2002) (concluding that a policy with identical wording does not confer discretion on Reliance); *Walke v. Group Long Term Disability Ins.*, 256 F.3d 835, 839–40 (8th Cir.2001) (same); *Sandy v. Reliance Standard Life Ins. Co.*, 222 F.3d 1202, 1207 (9th Cir.2000) (same); *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 252 (2d Cir.1999) (same). In any event, our conclusion that Reliance properly denied Gallagher's claim would be the same under either standard.

adopt an appropriate description of the claimant's occupation. *See Kinstler*, 181 F.3d at 252 ("[T]he applicable definition of 'regular occupation' shall be a position of the same general character as the insured's previous job, requiring similar skills and training, and involving comparable duties." (citation omitted)). To this end, Reliance requires the employer of the insured to give a description of the employee's duties. In response to this inquiry, GWP described Gallagher's job duties in the following manner:

> The Employee was one of the Company's executives and held the title of Vice Chairman and Publisher and had the powers that are normally exercised by an executive officer and performed services and duties for the Company consistent with such position, with any additions to the scope of the duties of said employment within the field of operations of the Company as may be reasonably specified from time to time by the Company or the Board of Directors. Without in any way limiting the foregoing, the Employee engaged primarily in the domestic and foreign wholesale operation of the Company. The Employee also devoted time, energy and skill during regular business hours to the promotion of the Company's language skills and overseas operations.
>
> . . .
>
> Mr. Gallagher was in charge of international sales which required frequent travel to Miami, Mexico, Ireland, Spain and Germany. He was also in charge of publishing which required editing, proofreading and acting as the liaison with printers and others.

(J.A. at 390–91.) This job description fails to give much detail regarding Gallagher's specific duties. Gallagher's duties as vice president, for example, are simply defined as those "consistent with such [a] posi-

tion." (J.A. at 390.) Reliance therefore turned to the Department of Labor's Dictionary of Occupational Titles (the DOT) to define Gallagher's material duties as a publisher and vice president. *Cf. DeLoatche v. Heckler*, 715 F.2d 148, 151 (4th Cir.1983) ("[T]he Secretary [of Health and Human Services] may rely on the general job categories of the [DOT] as presumptively applicable to a claimant's prior work."). Specifically, Reliance used the DOT occupation description for the position of "editor" in the "printing and publishing industry" and for the position of "vice president" in "any industry." (J.A. at 372–76.) The DOT entry for editor describes the position as sedentary with frequent reaching, handling, talking, hearing, and occasional fingering. According to the DOT, an editor has the following occupational duties:

1. Confers with executives, department heads, and editorial staff to formulate policy, coordinate department activities, establish production schedules, solve publication problems, and discuss make-up plans and organizational changes.

2. Determines theme of issue and gathers related material.

3. Writes or assigns staff members or freelance writers to write articles, reports, editorials, reviews, and other material.

4. Reads and evaluates material submitted for publication consideration.

5. Secures graphic material from picture sources and assigns artists and photographers to produce pictures and illustrations.

6. Assigns staff member, or personally interviews individuals and attends gatherings, to obtain items for publication, verify facts, and clarify information.

7. Assigns research and other editorial duties to assistants.

8. Organizes material, plans overall and individual page layouts, and selects type.

9. Marks dummy pages to indicate position and size of printed and graphic material.

10. Reviews final proofs and approves or makes changes.

11. Reviews and evaluates work of staff members and makes recommendations and changes.

[Duties] MAY ALSO INCLUDE:

1. May perform related editorial duties listed under EDITORIAL ASSISTANT (print. & pub.).

2. May direct activities of production, circulation, or promotion personnel.

(J.A. at 372 (citing Dep't of Labor, Dictionary of Occupational Titles (DOT), Code 132.037–022 (4th ed.1991)).)

The DOT also describes the position of vice president as sedentary, demanding frequent talking and hearing and occasional reaching, handling, and fingering. A vice president has the following occupational duties:

1. Participates in formulating and administering company policies and developing long range goals and objectives.

2. Directs and coordinates activities of department or division for which responsibility is delegated to further attainment of goals and objectives.

3. Reviews analyses of activities, costs, operations, and forecast data to determine department or division progress toward stated goals and objectives.

4. Confers with chief administrative officer and other administrative personnel to review achievements and discuss required changes in goals or objectives

resulting from current status and conditions.

(J.A. at 374 (citing DOT, Code 189.117–034).)

■ Gallagher argues that the material duties set forth in the DOT descriptions for Gallagher's occupation "do not match" his actual job and, thus, Reliance's analysis is "fatally flawed." (Appellee's Br. at 26.) He fails, however, to point to any specific duty in the DOT description that was in some way different from his actual job duties. Comparing GWP's description of Gallagher's job with the DOT occupation description used by Reliance, we conclude that the latter involves duties comparable to the former. For example, while GWP states that Gallagher's job requires editing, proofreading, and acting as a liaison with printers and others, the DOT describes these same duties with more specificity, such as: "Marks dummy pages to indicate position and size of printed and graphic material," and "[r]eviews final proofs and approves or makes changes." (J.A. at 372 (citing DOT, Code 132.037–022).) The only significant discrepancy between the job description adopted by Reliance and GWP's description of Gallagher's actual job is the failure of the former to include the travel requirement. This omission, however, is not a fatal flaw in Reliance's analysis. A general job description of the DOT, to be applicable, must involve comparable duties but not necessarily every duty. *DeLoatche*, 715 F.2d at 151. In this case, Gallagher must establish that he is unable to perform each and every material duty of his occupation. Accordingly, if he fails to demonstrate that he is unable to perform some duties that do not require travel, establishing an inability to travel would not save his claim.[7]

---

7. In its October 13, 1999, response to Gallagher's request for review, Reliance briefly addressed the travel requirement by making the following observation: "Dr. Glaza's treatment records document that Mr. Gallagher continued to travel on business during the months

The description of Gallagher's duties adopted by Reliance is therefore not inappropriate despite the omission of a travel requirement.[8]

Having adopted an objectively reasonable job description to define Gallagher's material duties, Reliance then evaluated Gallagher's medical condition against these duties. On December 8, 1998, Reliance sent Dr. Aizcorbe, Gallagher's primary treating physician, the DOT occupation descriptions and asked him to highlight the duties from the DOT description that Gallagher could not perform.[9] Although Dr. Aizcorbe noted several duties that Gallagher could not perform, he affirmed that Gallagher could read and evaluate material, review final proofs, and approve or make changes. Without further elaboration, Dr. Aizcorbe wrote that Gallagher could direct but not coordinate department activities. Under the duty involving marking dummy pages, Dr. Aizcorbe wrote "maybe," and under the duty involving planning page layouts, he wrote "depends." (J.A. at 345.) Finally, Dr. Aizcorbe's response to the duty of directing activities of production, circulation, or promotion personnel suggested that Gallagher could perform the duty but that he would have to spend "some time" at it. (J.A. at 345.) Thomas J. Hardy, a Vocational Specialist employed by Reliance, also concluded that Gallagher could perform several duties of his occupation. He explained that the medical evidence indicated that Gallagher had a sedentary work capacity. Hardy also noted that some of Dr. Aizcorbe's responses appeared to be inconsistent. For example, Dr. Aizcorbe stated that Gallagher could review final proofs but that he could not review analyses of activities. Both activities, however, would appear to involve the same level of physical exertion. Hardy concluded that Gallagher could perform the following duties: direct and coordinate activities of his department, review analysis of activities, confer with chief administrative officer, confer with executives, determine theme of issue, read and evaluate material, assign staff members, assign research and other editorial duties, mark dummy pages, review final proofs, and re-

immediately preceding the date he ceased working, and that [he] has continued to travel for pleasure in the months since he ceased working." (J.A. at 105.) For example, Dr. Glaza's records indicate that Gallagher traveled to Havana, Cuba and New Orleans, Louisiana in 1998, prior to his resignation on May 2, 1998, and that he traveled to Jekyll Island, Georgia in February 1999, after his resignation. There is no evidence, however, that Gallagher traveled during the elimination period. We note that Gallagher's travel after the elimination period would not necessarily defeat his claim. To be eligible for benefits, Gallagher must demonstrate that he could not perform each and every material duty of his regular occupation during the elimination period. Once his eligibility is established, however, he would still be entitled to benefits if his condition improved to a partial disability after the elimination period. (J.A. at 84 ("An insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period.").)

8. Because Gallagher must demonstrate that he is unable to perform all of his duties, some of which did not require travel, his inability to travel would not, by itself, establish that he was totally disabled.

9. Apparently, the DOT descriptions also were sent to Dr. Siva, who did not timely respond. We note that in a one-page letter sent to Reliance after Reliance had denied Gallagher's claim, Dr. Siva mentioned that he reviewed Gallagher's job description. He failed to identify, however, whether the job description he reviewed was GWP's or from the DOT. Moreover, without any evaluation, explanation, or temporal context, Dr. Siva simply concluded that "because of [Gallagher's] emotional status secondary to his pain, as well as having to take multiple medications, he will not be able to perform those duties." (J.A. at 280.)

view and evaluate work. He noted that these duties "can be performed with change of position at will and are extremely sedentary in nature." [10] (J.A. at 321.)

The remaining pieces of medical evidence that Gallagher relies on to support his claim for disability benefits are inconclusive with regard to whether Gallagher was incapable of performing each and every occupational duty. For example, in a May 21, 1998 letter to Dr. Aizcorbe, Dr. Glaza wrote that Gallagher's resignation was a good decision because "his hectic schedule was only slowing down his progress." (J.A. at 284 (emphasis omitted).) This statement does not suggest that Gallagher was incapable of performing his occupational duties, only that performing his duties slowed the progress of the chiropractic treatment Dr. Glaza was providing him. Another example is a June 1, 1999 letter by Dr. Frank Chevres, in which he cryptically notes that Gallagher had "gone through a period" of partial disability but was now "totally disabled." (J.A. at 286.) Without more information regarding when Gallagher was in a "period of partial disability" and what definition of "totally disabled" Dr. Chevres used, his opinion is also inconclusive with regard to whether Gallagher was incapable of performing all of his occupational duties. Finally, Dr. Siva, in a June 1, 1998 letter to Dr. Aizcorbe, wrote that Gallagher was "nonfunctional" and that he in all probability would not be gainfully employed. (J.A. at 482.) There is, however, no indication that Dr. Siva was basing his opinions specifically on the Plan's definition of total disability, in other words, whether Gallagher was incapable of performing each and every occupational duty.

Gallagher argues that Reliance wrongly focused on his physical ability to perform his previous job without considering the debilitating effect of his pain. It is clear from the record that due to his chronic back condition, Gallagher has endured significant pain and discomfort for over two decades. Whether Gallagher's pain made him totally disabled, however, hinges on whether it made him incapable of performing all the duties of his occupation. Gallagher performed at least some of his occupational duties up to May 2, 1998, the date he resigned and the date he claims he became totally disabled under the Plan. Our search of the record reveals no evidence that Gallagher's pain became more severe on or after May 2, 1998. Indeed, there is some evidence that Gallagher's condition was marginally improving prior to May 2, 1998. On January 28, 1998, for example, Dr. Siva described Gallagher's

---

**10.** There is other medical evidence in the record to support the finding that Gallagher was capable of the sedentary duties of his occupation. For example, Dr. Heinig, who examined Gallagher for his social security disability claim, determined that out of an eight-hour work day, Gallagher was capable of sitting for about six hours by periodically alternating sitting and standing to relieve pain or discomfort. While Dr. Heinig's report demonstrates that Gallagher could not perform sedentary duties all day, Gallagher's ability to perform material duties on a part-time basis makes him, at best, partially disabled under the Plan and, thus, ineligible for benefits. We recognize that there also is evidence in the record that suggests Gallagher could not perform even sedentary tasks. For example, when filling out the Physician's Statement portion of Gallagher's claim, Dr. Aizcorbe stated that Gallagher was restricted to one hour of sitting and one hour of standing a day. This evidence, however, is contradicted by Dr. Aizcorbe's own statements regarding Gallagher's ability to perform certain duties of his occupation. Moreover, on June 3, 1999, William H. Haney, a vocational rehabilitation examiner, concluded that "Mr. Gallagher has no vocational capacity to perform work even at the Sedentary level of exertion," however, he gave no indication that he was describing Gallagher's condition during the elimination period. (J.A. at 272.)

neck condition as "asymptomatic" and recommended that no action be taken with regard to his lower back. (J.A. at 424–25.) In March 1998, Dr. Glaza, a Chiropractic Physician, noted that Gallagher "did extremely well in Cuba," and was "feeling better." (J.A. at 204.) Dr. Glaza also noted at that time that Gallagher had reduced his pain medicine from three doses a day to two and planned to further reduce his pain medicine to one dose a day. On May 1, 1998, the day prior to Gallagher's resignation, Dr. Glaza noted that Gallagher had just returned from New Orleans and was using a treadmill. During Gallagher's next visit, on May 8, 1998, Dr. Glaza did report that Gallagher's lumbar spine was sore and that his cervical spine was more unpredictable. There is no indication, however, that this pain was more severe than his pain prior to May 2, 1998. Because Gallagher could perform certain occupational duties prior to May 2, 1998 and has not presented evidence demonstrating that his condition became more severe on or after May 2, 1998, we conclude that Gallagher has not submitted objectively satisfactory evidence that he was unable to perform each and every material duty of his occupation during the elimination period.

### B.

 Gallagher makes two additional arguments to support his claim that Reliance wrongly denied him disability benefits. First, Gallagher argues that substantial weight must be given to the Social Security Administration's disability determination. There is no indication, however, that the definition of "total disability" under the Plan in any way mirrors the relevant definition under the regulations of the Social Security Administration. *Cf. Elliott*, 190 F.3d at 607 (concluding that the Social Security standard is not analogous to a plan standard under which an employee is disabled if she is unable to engage in "each and every occupation or employment for wage or profit for which … she is reasonably qualified by education, training or experience"). Under the Plan, Gallagher is totally disabled only if he is unable to perform *all* the duties of his past occupation, while under the Social Security Administrator's regulations, Gallagher is disabled if he is unable to "engage in any substantial gainful activity…." 42 U.S.C.A. § 423(d)(1)(A) (West 1991). Under the latter definition, an ability to do part-time work may not preclude a finding of disability. *See Kelley v. Apfel*, 185 F.3d 1211, 1214–15 (11th Cir.1999) (raising the issue of whether a claimant is entitled to benefits even though he is capable of working on a part-time basis but declining to resolve the issue). Under the Plan, if an employee can perform the duties of his regular occupation on a part-time basis, he is partially disabled. An employee is not eligible for benefits if he was partially disabled during the elimination period. Moreover, under the standard used by the Social Security Administrator, Gallagher's disability began on December 10, 1997. (J.A. at 117.) Gallagher did not become totally disabled under the Plan on this date because he continued to perform occupational duties until his resignation on May 2, 1998. The social security disability standard clearly differs, therefore, from the definition of total disability under the Plan. Accordingly, there is "no obligation to weigh the agency's disability determination more favorably than other evidence." *Elliott*, 190 F.3d at 607.

 Second, Gallagher argues that Reliance did not give sufficient weight to others who determined that he was totally disabled. For example, Gallagher claims that a letter from Father John P. Bradley, GWP's Chairman of the Board, stating that Gallagher was disabled, represents

the determination of the plan administrator and therefore is entitled to the same deference as the determination of Reliance, the fiduciary. Gallagher admits in his complaint, however, that under the Plan, Reliance has the sole authority to make determinations regarding benefits.[11] Moreover, we find no provision in the Plan that suggests that GWP retained any decision-making authority. We therefore conclude that even if Bradley's letter represents a determination by GWP, it should be treated no differently than the other evidence in the record.[12] Because we conclude that Gallagher failed to submit objectively satisfactory proof that he was totally disabled, we hold that Reliance properly denied Gallagher's claim for disability benefits.[13]

### IV.

In summary, our de novo review of Reliance's denial of Gallagher's claim for disability benefits reveals that Gallagher failed to submit, as required under the Plan, objectively satisfactory proof of a disability that made him incapable of performing each and every material duty of his occupation. We therefore reverse the district court's grant of summary judgment in Gallagher's favor and the award of attorney's fees, and remand for entry of judgment in Reliance's favor.

*REVERSED AND REMANDED WITH INSTRUCTIONS.*

11. We recognize that GWP's dissatisfaction with the coverage of its employees under the Reliance Plan has led it to terminate its relationship with Reliance. We are bound, however, to apply the terms of the Plan under which Gallagher is covered.

12. Gallagher also asks us to consider the Declaration of Richard G. Hoefling, GWP's general counsel and corporate secretary, which was created to support Gallagher's motion for summary judgment and thus is not part of the administrative record. Absent a finding of exceptional circumstances by the district court, a court conducting de novo review of ERISA benefits determinations should limit its review to the evidentiary record that was presented to the plan administrator or fiduciary. *Quesinberry v. Life Ins. Co. of N. Am.,* 987 F.2d 1017, 1026–27 (4th Cir.1993) (en banc). Because Gallagher made no contention to the district court that such an exceptional circumstance exists, we will only consider evidence in the administrative record.

13. Because Gallagher is not a prevailing party, his request for attorney's fees must be denied. *Martin v. Blue Cross & Blue Shield of Va., Inc.,* 115 F.3d 1201, 1210 (4th Cir.1997) ("[O]nly a prevailing party is entitled to consideration for attorneys' fees in an ERISA action.").