**Harriet T. COSSIO**

v.

**LIFE INS. CO. OF NORTH AMERICA**

No. CIV.A.WMN–01–4024.

United States District Court, D. Maryland.

Nov. 25, 2002.

Paul W. Nolan, Law Office of Paul W. Nolan, Baltimore, MD, for Harriet T. Cossio, Plaintiff.

Monte Fried, Joy Karen Sakellaris, Wright Constable and Skeen LLP, Baltimore, MD, for Life Insurance Company of North America, Defendant.

## MEMORANDUM

NICKERSON, Senior District Judge.

Before the Court are Plaintiff's and Defendant's Motions for Summary Judgment (Paper Nos. 9 and 8, respectively). The motions have been fully briefed and are ripe for decision. Upon a review of the pleadings and applicable case law, this Court determines that no hearing is necessary (Local Rule 105.6) and that Defendant's motion will be granted and Plaintiff's motion denied.

## I. BACKGROUND

Plaintiff, Harriet Cossio, sued Defendant, Life Insurance Company of North America (LINA), the administrator of her employee disability benefit plan, alleging that Defendant's termination of her long term disability benefits was in violation of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* Plaintiff worked for U.S. Office Products as a Furniture Coordinator. In 1995, Defendant, Life Insurance Company of North America (LINA), issued a Disability Policy to U.S. Office Products. In October 1997, Plaintiff suffered a vaginal prolapse, caused by a car accident the previous September, and she received short-term disability (STD) benefits. Plaintiff's maladies expanded, and by mid-January 1998, her treating physician, Dr. Gloria Yim, indicated that Plaintiff was suffering from vaginal prolapse, urinary incontinence, anemia, vaginal bleeding, extreme fatigue, weakness, facial/lower extremity swelling, hoarseness, hair loss, brittle nails, cold intolerance, depression, and the development of severe hypothyroidism following Plaintiff's surgery in the fall of 1997. Plaintiff's STD benefits were limited to twenty-six weeks, and because Defendant anticipated that Plaintiff's disability might continue beyond that period, in late February and early March 1998, it initiated a long-term disability (LTD) file.[1] Defendant began corresponding with Plaintiff, her physicians, and her employer regarding information needed to support LTD benefits.

---

1. Under Plaintiff's policy, "Disability" has a changing definition. During the first twenty-four months of an employee's disability, the employee is entitled to benefits if she is disabled from her own occupation. Thereafter, the employee is covered under the policy only if she is disabled from any occupation for which she may become qualified based on education, training, and experience. Pl.'s

Exh. 1, Group Policy, a Contract between LINA and U.S. Office Products (Policy), at 7. The policy's provisions require an employee to submit satisfactory proof that there is no break in her incurred disability (that there is continuous disability) and to submit proof of being under the regular care of a doctor in order for benefits to continue. *Id.* at 15.

Effective April 16, 1998, LTD benefits commenced without any break in benefit payments for Plaintiff. Defendant continued to correspond with Plaintiff during this time and urged her to submit information relating to her disability. By June 1998, updated medical records provided by Plaintiff showed that she was continuing to experience the same symptoms and that Plaintiff could not return to her prior occupation. Over the course of the next year, Defendant continued Plaintiff's LTD benefits, and Plaintiff and Defendant communicated regarding Plaintiff's condition and her vocational rehabilitation progress. In October 1999, Defendant wrote to Plaintiff advising her that she was approaching the end of the twenty-four month period and that Defendant would be investigating her claim to determine if she was eligible for continuing benefits under the "any occupation" definition of disability. Defendant contacted Plaintiff's health care providers and asked them for updated reports on Plaintiff's condition.

In mid-December 1999, Defendant assigned Plaintiff's file to a LINA medical consultant who recommended a Functional Capacity Evaluation (FCE). HealthSouth, an independent organization, conducted the FCE in mid-February 2000, and in March 2000, Defendant sent the FCE results to Plaintiff's medical providers to solicit feedback and request current medical reports. Defendant also sent the FCE to Marion Resnick, a LINA Rehabilitation Specialist, who conducted a Transferable Skills Analysis (TSA). She found seven light duty jobs that generally met the requirements for transferability and that would take advantage of Plaintiff's skills, education, and physical abilities. On May 8, 2000, Defendant sent a letter to Plaintiff advising her that her LTD benefits were being terminated. In this letter, Defendant listed its reasons for terminating Plaintiff's benefits and concluded that the evidence in Plaintiff's file did not establish a disability from "any occupation." Defendant advised Plaintiff of her right to appeal and indicated that she would need to submit medical evidence from October 28, 1999 through the present showing any limitations.

Plaintiff filed her first appeal in June 2000. Over the next several months, she submitted various medical records. On December 19, 2000, Defendant upheld its previous decision to terminate Plaintiff's LTD benefits and listed its reasons in a letter to Plaintiff's counsel. Plaintiff then filed a request for a second reconsideration in May 2001. Defendant granted Plaintiff's request for an additional appeal and gave her the opportunity to submit additional medical evidence. On September 12, 2001, Defendant again denied Plaintiff's claim for benefits beyond April 2000. Plaintiff then brought the instant action and alleges that Defendant's decision to terminate Plaintiff's LTD benefits violated the terms of the contract issued to her employer. Both Plaintiff and Defendant now move for summary judgment based upon the evidentiary record submitted to Defendant.

## II. STANDARD OF REVIEW

In reviewing Defendant's termination of disability benefits under ERISA, this Court must decide whether the policy's language clearly grants Defendant discretion to determine Plaintiff's eligibility for benefits, and if so, whether Defendant acted within the scope of that discretion. *Feder v. Paul Revere Life Ins. Co.,* 228 F.3d 518, 522 (4th Cir.2000). If the plan does not clearly grant discretion, then the standard of review of Defendant's decision is de novo. *Gallagher v. Reliance Standard Life Ins. Co.,* 305 F.3d 264, 269 (4th Cir.2002); *Feder,* 228 F.3d at 524.

With these principles in mind, the Court turns to examine the following poli-

cy language: "Satisfactory proof of disability must be provided to the Insurance Company, at the Employee's expense, before benefits will be paid." Pl.'s Exh. 1, Policy, at 15. The Fourth Circuit recently published an opinion in which it concluded that the "satisfactory proof" language does not grant plan administrators discretionary authority. *Gallagher*, 305 F.3d at 269. The court stated that the language does not clearly grant discretion to a plan administrator and that an insured employee would not read the language as granting the administrator discretion to determine whether the proof was satisfactory. *Id.* at 269–70. Accordingly, this Court determines that the proper standard of review of Defendant's termination of Plaintiff's benefits is de novo. Under a de novo review, this Court must determine whether the proof of total disability Plaintiff submitted to Defendant was objectively satisfactory. *Id.* at 270.

### III. DISCUSSION

■ Plaintiff received LTD benefits for twenty-four months. At the end of that time in April 2000, Defendant terminated her benefits because it concluded that she was not continuously disabled from "any occupation" under the terms of the policy. Under Plaintiff's policy, an insured employee is totally disabled when, as the result of injury or sickness, the employee "is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified

based on education, training or experience." Pl.'s Exh. 1, Policy, at 7. Plaintiff's policy required Plaintiff to submit sufficient proof that she was continuously disabled after April 2000, as well as proof of regular attendance to a physician.[2] *Id.* at 15 and 22.

At the time of the initial termination in May 2000, the record shows that Plaintiff's current treating physicians provided no medical reports indicating that Plaintiff was disabled. *See* Def.'s Exh. 1, Claims File, at 481–85. Defendant ordered the FCE and TSA to determine what type of work Plaintiff was able to do based on her training and experience. Defendant sent the FCE to Plaintiff's treating physicians, and none of them disputed that Plaintiff was capable of performing light duty work.[3] *Id.* Additionally, the TSA identified various jobs Plaintiff was capable of securing.

After Plaintiff noted her first appeal, Defendant referred the appeal to an independent review team that had not been involved in the original discontinuance of benefits decision. In her appeal, Plaintiff submitted medical records revealing that she had undergone hip replacement surgery in July 2000. *Id.* at 508–13. Plaintiff also submitted a Vocational Analysis by Martin Kranitz, a Certified Rehabilitation Counselor, who reviewed the FCE and TSA and disputed their findings.[4] *Id.* at 503–07. Defendant considered Kranitz's criticisms and had a new TSA completed

---

2. Courts have held that policy language requiring an insured to submit "proof of continued disability" shifts the burden of proof to the insured. *Mason v. M.F. Smith & Assoc. Employee Benefit Plan*, 158 F.Supp.2d 673, 685 (D.S.C.2001).

3. The record does indicate that Dr. Valladares concluded that Plaintiff was not able to work full-time as of December 1999. Dr. Valladares, however, treated Plaintiff only temporarily and had not seen Plaintiff for some time

before the May 2000 benefit determination. Moreover, he refused to complete any disability forms. Def.'s Exh. 1, Claims File, at 350–353, 460, 462.

4. Kranitz stated that the TSA did not consider every factor from the FCE, that there were inconsistencies in the FCE relating to Plaintiff's ability to occasionally lift certain weights and the extent of her pain, and that the TSA incorrectly referred to Plaintiff's former occupation.

based on Plaintiff's former job description. *Id.* at 519–21. Plaintiff later submitted a report from Dr. Robert Kan, dated October 21, 2000, which concluded that, in October 2000, Plaintiff had fewer physical capabilities than those that were indicated in the original FCE examinations performed in early 2000. *Id.* at 525–31. In its December 19, 2000 letter denying Plaintiff's appeal, Defendant concluded that Kan's exam, conducted in October 2000, could not accurately report on Plaintiff's condition as of April 2000, the date on which her benefits were discontinued. Defendant stated that the medical evidence provided did not support continuous total disability from any occupation between April 15, 2000 and at least June 2000, the date of Plaintiff's hip surgery, nor did the medical evidence support that her limitations were so severe that she was unable to perform any occupation as of the date benefits were discontinued. *Id.* at 536–39.

Plaintiff requested a second appeal in May 2001. With this appeal, Plaintiff submitted a copy of a March 2001 Social Security Administration decision (SSA decision) granting Plaintiff Social Security benefits and a report from Dr. Mark Hochberg dated February 17, 1999. *Id.* at 545–65, 542–44. Later, Plaintiff submitted additional medical evidence from June 16, 2000 through July 13, 2001, an Operative Report from St. Agnes Hospital dated July 11, 2000, and a Bone Scan report dated October 3, 2000. *Id.* at 571–86. On September 12, 2001, Defendant again denied Plaintiff's claim for benefits beyond April 16, 2000. In its letter, Defendant stated that the additional medical materials did not establish that Plaintiff was disabled from April 2000, because all of the materials dealt with the time after June 2000. Defendant's letter also noted that Plaintiff did not present any medical evidence which refuted the findings of the FCE or the revised transferable occupations. *Id.* at 587–89.

The Court finds that Plaintiff has not submitted objectively satisfactory evidence that she was disabled from any occupation as of April 16, 2000. Although Plaintiff has submitted much evidence supporting her claim of disability following her hip replacement surgery in July 2000, she has not provided anything reflecting her disability in April. None of Plaintiff's treating physicians stated that she was disabled in April, and none disagreed with the FCE's conclusions relating to her capabilities at that time. Because Plaintiff's policy requires that Plaintiff prove that she was disabled from any occupation after monthly benefits had been payable for twenty-four months, and because Plaintiff did not provide such proof, she was no longer "disabled" under the policy, and Defendant acted consistently with its policy when it terminated her benefits. *See* Pl.'s Exh. 1, Policy, at 15 (describing when disability benefits are terminated).

Plaintiff makes three additional arguments to support her claim that Defendant wrongly terminated her disability benefits. First, Plaintiff argues that "Defendant's insistence that her disability be 'continuous' directly contravenes provisions of its contract." Pl.'s Mot. at 6. Plaintiff refers to the "Successive Periods of Disability" provision of her policy for support. This provision states:

> Once an Employee is eligible to receive Disability Benefits under the Policy, separate periods of Disability resulting from the same or related causes are a continuous period of Disability unless the Employee can return to Active Service for 6 or more consecutive months. A period of Disability is not continuous if:
>
> 1. separate periods of Disability result from unrelated causes; or
> 2. the later Disability occurs after coverage under the Policy ends.

Pl.'s Exh. 1, Policy, at 15. Using this provision, Plaintiff argues that she has to prove just: 1) that she had been eligible for disability benefits under the policy; 2) that her current disability is directly or indirectly connected to her prior disability; and 3) that her second period of disability occurred within six months of the end of her prior period of disability. Pl.'s Mot. at 6–7. Plaintiff, however, makes no mention of the second part of the provision which specifically states that a period of disability is not continuous if the later disability occurs after coverage under the policy ends. Coverage under the policy ends when an employee's disability ends if the employee does not return to active service.[5] Pl.'s Exh. 1, Policy, at 4. According to the policy's definition of disability, Plaintiff was no longer disabled in April 2000 because she had not proved that she was unable to perform any occupation. Plaintiff did not return to active service at that time. Thus, Plaintiff's coverage under the policy ended, and this provision does not cover Plaintiff's later disability due to hip surgery in July.

■ Second, Plaintiff argues that the definition of disability in the contract is sufficiently similar to the definition of disability employed by the SSA so that Defendant should have accorded significant weight to the SSA decision.[6] Pl.'s Mot. at 8–9 (citing *Hines v. Unum Life Ins. Co. of America*, 110 F.Supp.2d 458, 468 (W.D.Va. 2000)). Plaintiff asserts that the Seventh Circuit held a similar policy definition as equivalent to the Social Security definition in *Ladd v. ITT Corp.*, 148 F.3d 753, 754 (7th Cir.1998). This Court does not agree with Plaintiff's interpretation of that case. The Seventh Circuit did not find that the two definitions were the same but decided to "proceed on the assumption" that they were for purposes of resolving the plaintiff's particular claim after the defendant's counsel was unable to articulate any differences between the two definitions. *Id.*

In this case, Defendant has articulated differences between the two definitions. *See* Def.'s Opp. at 7–9. In applying its disability definition, Social Security deems a claimant "disabled" if she cannot perform any past relevant work because of a severe impairment, and if her remaining physical and mental capacities, along with age, education, and past work experience are not consistent with meeting the physical and mental demands of a significant number of jobs in the national economy. *See* 42 U.S.C. § 1382c (a)(3)(B) (2002); 20 C.F.R. § 404.1505(a) (2002). Under the policy's definition, a claimant is "disabled" when she is unable to perform "any occupation," and the policy does not require that the occupation constitute a significant number of jobs in the national economy. Pl.'s Exh. 1, Policy, at 7. The Social Security disability standard differs from the defi-

---

**5.** An employee will be considered in active service with the employer when "[h]e or she is actively at work. This means the Employee is performing his or her regular occupation for the Employer on a Full-time basis, either at one of the Employer's usual places of business or at some location to which the Employer's business requires the Employee to travel." Pl.'s Exh. 1, Policy, at 1.

**6.** Plaintiff also argues that Defendant refused to consider the SSA decision in making its decision on the second appeal. Plaintiff cites two letters from Defendant in which Defen-

dant stated that the SSA decision "has no bearing on our decision regarding [Plaintiff's] Long Term Disability benefits." Pl.'s Exhs. 20 and 25. Subsequent language in both of the letters, however, does indicate that Defendant considered the SSA decision but noted that the SSA decision did not have an exclusive bearing on Defendant's decision. *See id.* (stating that "[a]lthough we consider the claimant's Social Security award in our Long Term Disability benefits decision, we do not use Social Security's decision as the basis or the sole reason to approve or deny Long Term Disability benefits").

nition of disability under the Plan. Accordingly, there is no obligation to afford the SSA decision significant weight. *See Elliott v. Sara Lee Corp.*, 190 F.3d 601, 607 (4th Cir.1999) (stating that SSA decisions are not subject to any more favorable weight than any other evidence when there is no indication that the disability standards are analogous).

■ Finally, Plaintiff argues that Defendant "has never offered any evidence or explanation for ignoring the opinion of [Kranitz]." Pl.'s Mot. at 9. As stated above, Kranitz offered several criticisms of the FCE and TSA. Kranitz noted that the nature of Plaintiff's former job was administrative (not a sales representative as indicated in the initial TSA). Defendant did prepare a revised TSA in response to Kranitz's observation. Kranitz also gave the opinion that Plaintiff needed to rest or sleep for one-hour after four hours of work and that most jobs would not allow such a rest period. Plaintiff argues that Defendant never offered any evidence to contradict Kranitz's conclusion. Neither Kranitz nor Plaintiff presented any evidence, however, to indicate that the jobs identified in the revised TSA were those which would not have allowed a one-hour rest period. Finally, Kranitz's report criticized some aspects of the FCE. Again, neither Kranitz nor Plaintiff submitted any medical evidence to demonstrate that Plaintiff was not capable of performing at the level indicated by the FCE. Accordingly, this Court concludes that Defendant did not improperly ignore Kranitz's opinion.

## IV.  CONCLUSION

In summary, this Court's de novo review of Defendant's termination of Plaintiff's disability benefits reveals that Plaintiff failed to submit, as required under the policy, objectively satisfactory proof of a disability that made her incapable of performing any occupation as of April 2000. For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted, and Plaintiff's Motion for Summary Judgment will be denied.

A separate order consistent with this memorandum will issue.

## ORDER

Pursuant to the foregoing memorandum, and for the reasons stated therein, IT IS this      day of November, 2002, by the United States District Court for the District of Maryland, hereby ORDERED:

1.  That Defendant's Motion for Summary Judgment (Paper No. 8) is hereby GRANTED;

2.  That Plaintiff's Motion for Summary Judgment (Paper No. 9) is hereby DENIED;

3.  That judgment is entered in favor of Defendant and against Plaintiff;

4.  That this case is hereby CLOSED;

5.  That any and all prior rulings made by this Court disposing of any claims against any parties are incorporated by reference herein and this order shall be deemed to be a final judgment within the meaning of Fed.R.Civ.P. 58; and

6.  That the Clerk of the Court shall mail or transmit copies of the foregoing memorandum and this order to all counsel of record.