UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOEL W. CARRIGAN,
                              *Plaintiff-Appellee,*

v.                                                    No. 02-1196

RELIANCE STANDARD LIFE INSURANCE
COMPANY,
                              *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CA-99-430-3-MU)

Argued: October 29, 2002

Decided: January 17, 2003

Before LUTTIG and MOTZ, Circuit Judges, and
Andre M. DAVIS, United States District Judge for the
District of Maryland, sitting by designation.

---

Vacated and remanded by unpublished per curiam opinion. Judge
Luttig wrote a concurring opinion.

---

## COUNSEL

**ARGUED:** Joshua Bachrach, RAWLE & HENDERSON, L.L.P.,
Philadelphia, Pennsylvania, for Appellant. Louis L. Lesesne, Jr.,
LESESNE & CONNETTE, Charlotte, North Carolina, for Appellee.
**ON BRIEF:** Edward G. Connette, Jr., LESESNE & CONNETTE,
Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Reliance Standard Life Insurance Company ("Reliance") appeals from the district court's grant of summary judgment in favor of Joel Carrigan ("appellee") in this action for wrongful denial of benefits under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. (West 2002). As the district court did not have the benefit of this court's opinion in *Gallagher* v. *Reliance Standard Life Ins. Co.*, 305 F.3d 264 (2002), we vacate the district court's grant of summary judgment, and remand the case for further proceedings.

I.

Appellee worked as a corporate officer and publisher for Goodwill Publishing, Inc., for approximately 30 years. His job title was "Director of Field Communications," and his job duties as described by Goodwill Publishing included receiving calls from sales personnel, resolving problems and complaints regarding sales, meeting with office personnel and researching, and occasionally filling orders for supplies, involving the lifting of boxes and packing material. The Dictionary of Occupational Titles entry matched to appellee's job included such tasks as monitoring clerks, reviewing orders, training clerks, issuing written and oral instructions, and preparing reports.

Appellee also had a long history of health problems associated with his back and legs. He had undergone four lumbar or cervical surgeries, the first in 1964, and had suffered chronic back pain since at least the 1970's. From 1995 through 1999, appellee visited multiple physicians, including Dr. Darden, an orthopaedist, and Drs. Aiken and Anthony, internists, regarding his back and leg problems. Dr. Darden reported that appellee suffered from degenerative disk disease, with a possible lumbar radiculopathy[1] of the left leg. In October of 1998,

---

[1] Radiculopathy is a disorder of the spinal nerve roots. *See Stedman's Medical Dictionary* 1503 (27th ed. 2000).

Dr. Darden recommended that appellee receive a microdiscectomy on the left side between the L2-L3 vertebrae.[2] Dr. Aiken noted that appellee was in obvious pain, suffered from back spasms, and had limited mobility and limited physical capabilities. Dr. Aiken concluded that appellee had chronic severe degenerative disc disease.

From March 1997 until November 1998, appellee was also treated by Dr. Anthony, an internist. On a statement made in March 1999, Dr. Anthony concluded that appellee had limited physical capabilities, and stated that in his opinion appellee was "disabled from his past relevant work as an office manager," and was "disabled from performing even sedentary work," although no definition of "disabled" was specified.

In May of 1999, Dr. Gudeman, another physician, concluded that appellee suffered from moderately severe cervical degenerative disc and spine disease with significant and bi-lateral foraminal encroachment,[3] and he recommended that appellee undergo a cervical diskotomy[4] and fusion at the C4-5 and C5-6 vertebrae. The record does not specify whether appellee proceeded with this surgery.

On October 19, 1998, appellee applied, through Goodwill Publishing, for long-term disability benefits from Reliance, a fiduciary for Goodwill Publishing's long-term disability policy, an employee welfare benefit plan governed by ERISA. Appellee reported that the last day on which he worked full time was August 28, 1998, and was totally disabled from that date on due to his chronic back and leg pain. After evaluating the evidence submitted by appellee, Reliance denied the claim, determining that appellee failed to satisfy the plan definition of total disability. Appellee timely appealed, and Reliance affirmed its previous decision to deny benefits. On October 21, 1999, appellee then filed a lawsuit pursuant to 29 U.S.C. § 1132 challenging Reliance's determination. After considering the administrative record,

---

[2]A discectomy is the excision, in part or whole, of an intervertebral disk. *See Stedman's Medical Dictionary* 508 (27th ed. 2000).

[3]Foramina are apertures or perforations through bone or through a membranous structure. *See Stedman's Medical Dictionary* 698 (27th ed. 2000).

[4]Also referred to as a discectomy. *See* note 2.

the district court held that even under the more deferential abuse of discretion standard, Reliance abused its discretion by denying the application for benefits, and entered summary judgment in favor of appellee. Reliance filed a timely notice of appeal.

## II.

We review the district court's grant of summary judgment de novo, applying the same legal test as the district court. *See Elliott* v. *Sara Lee Corp.*, 190 F.3d 601, 605 (4th Cir. 1999). An ERISA plan administrator's or fiduciary's determinations are presumptively subject to de novo judicial review. *See Firestone Tire & Rubber Co.* v. *Bruch*, 489 U.S. 101, 112-13 (1989); *Doe* v. *Group Hospitalization & Medical Servs.*, 3 F.3d 80, 85 (4th Cir. 1993). A reviewing court will use a more deferential standard of review (such as abuse of discretion) only when the language of the plan confers discretion upon the administrator or fiduciary. *See Firestone Tire*, 489 U.S. at 111-12. This court, in *Gallagher*, has already interpreted the very plan language now in dispute and concluded that the plan did not confer any discretion on Reliance to determine eligibility for benefits. 305 F.3d at 270. Hence, we review Reliance's eligibility determination de novo.

Under the plan, an insured employee is "totally disabled" when, as the result of sickness or injury, the employee "cannot perform each and every material duty of his/her regular occupation" during the entire "Elimination Period." J.A. 463. The "Elimination Period" is a period of 90 consecutive days of total disability. J.A. 460, 462. The contract also requires that a claimant "submit satisfactory proof of total disability to [Reliance]" before benefits will be awarded. J.A. 468. As appellee claimed to be totally disabled beginning on August 28, 1998, J.A. 643, appellee's elimination period ran from August 28, 1998, until November 26, 1998.

This court, in *Gallagher*, interpreting the very plan before us now, concluded that in order for a claimant to be eligible for benefits, he must "submit objectively satisfactory proof that he was unable to perform all the material duties of his regular occupation [during the elimination period]." 305 F.3d at 270. As the district court did not have the benefit of the *Gallagher* opinion, we vacate its grant of summary

judgment and remand in order for it to consider appellee's proffered evidence using the analysis set forth in *Gallagher*.[5]

## CONCLUSION

For the reasons stated herein, we vacate the grant of summary judgment to appellee and the award of attorneys' fees, and remand to the district court for further proceedings.

*VACATED AND REMANDED*

LUTTIG, Circuit Judge, concurring:

It is plain that the facts in the instant case are materially indistinguishable from those in *Gallagher* v. *Reliance Standard Life Ins. Co.*, 305 F.3d 264 (2002).

For instance, in this case, although Dr. Anthony described appellee as "disabled from even sedentary work," J.A. 130, he did not set forth his definition of "disabled," and it is impossible to tell whether his definition comported with the plan's definition of total disability. Dr. Anthony also did not specify at what times or during which period appellee was disabled, and hence it is not possible to determine whether appellee suffered from the disability diagnosed by Dr. Anthony during the entire elimination period. Similarly, in *Gallagher*, several physicians testified that the plaintiff was disabled, but did not state that the definition of disability used was compatible with the plan's definition of total disability. 305 F.3d at 273-74.

In the instant case, Dr. Darden, the orthopaedist, did not give a conclusion one way or the other as to whether appellee was totally disabled. He did conclude that appellee had some physical limitations, but stated that appellee could work for approximately six hours in a work day, as long as appropriate positional changes were made. J.A. 312 (concluding that appellee could work for one hour sitting, two

---

[5]Since it is unclear in light of *Gallagher* that appellee will be a prevailing party, we also vacate the award of attorneys' fees to appellee. *See Martin* v. *Blue Cross & Blue Shield of Va., Inc.*, 115 F.3d 1201, 1210 (4th Cir. 1997).

standing, one walking, and two alternatively sitting and standing). Similarly, in *Gallagher*, one of the plaintiff's treating physicians concluded that the plaintiff could physically perform some of the material tasks of his job, even though the physician concluded otherwise as to other material tasks. 305 F.3d at 273.

Dr. Aiken, also, never concluded one way or the other that appellee was totally disabled. He, at best, confirmed that appellee suffered from chronic back pain, and did note in 1996 that appellee's back problems could, at some point in the future, act to disable appellee from gainful employment. J.A. 221. But he did not conclude that appellee was disabled, nor was evidence provided that the pain became noticeably worse beginning on August 28, 1998. Likewise, in *Gallagher*, the plaintiff argued that his back pain disabled him from performing the duties of his job. 305 F.3d at 274. But, he provided no evidence that the back pain became noticeably worse after the date of his alleged total disability (where, before such date, he performed some of his job duties). *Id.* at 274-75.

Appellee's vocational expert, Patrick Clifford, did submit an evaluation concluding that appellee was totally disabled under the definition of the plan. J.A. 92-95. But, Clifford did not specify that he was referring to appellee's condition during the elimination period, and indeed appeared instead to be referring to appellee's condition as of the time of his report (on or about June 23, 1999). This also mirrors the evidence presented in *Gallagher*, where the plaintiff presented a report from a vocational expert concluding that he was totally disabled under the definition used by the plan. 305 F.3d at 274 n.10. But, the vocational expert did not provide any indication that he was referring to the plaintiff's condition during the elimination period. *Id.* Indeed, to make matters worse for appellee, Clifford relied extensively on the various physicians' reports referenced above as the basis for his medical evaluation of appellee, J.A. 92-93, but as I noted above, these reports did not show or imply that appellee was totally disabled within the definition of the plan. By contrast, John Zurick, Reliance's vocational expert, upon reviewing some of the medical evidence, deduced that appellee could perform at least on a part-time basis the various duties of his job.

In fact, I note that in several respects the plaintiff in *Gallagher* presented stronger evidence of his disability than appellee. For

instance, the plaintiff in *Gallagher* was determined to be disabled by the Social Security Administrator, and was awarded Social Security benefits. 305 F.3d at 275. Appellee, by contrast, has not received an award of benefits from the Social Security Administration, and indeed the Disability Determination Service recommended that appellee be denied benefits. J.A. 665. And also, in the instant case, there is at least a dispute over whether appellee was actually at work during the elimination period, where it was apparently undisputed that the plaintiff in *Gallagher* did not work after his claimed date of total disability.

Notwithstanding the striking parallels between the facts in *Gallagher* and the facts in this case, I am comfortable with our disposition allowing the district court to consider whether appellee is entitled to an award of benefits under our precedent, given that *Gallagher* post-dated the district court's decision.