UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

DONALD D. LUCY,

*Plaintiff-Appellant,*

v.

THE MACSTEEL SERVICE CENTER
SHORT TERM DISABILITY PLAN; THE
MACSTEEL SERVICE CENTER LONG
TERM DISABILITY PLAN; LIFE
INSURANCE COMPANY OF NORTH
AMERICA,

*Defendants-Appellees.*

No. 03-1281

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Max O. Cogburn, Jr., Magistrate Judge.
(CA-02-18-1-C)

Argued: June 2, 2004

Decided: August 11, 2004

Before MICHAEL, TRAXLER, and GREGORY, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Allan Paul Root, ROOT & ROOT, Weaverville, North
Carolina, for Appellant. Edward Cook LeCarpentier, III, CRANFILL,
SUMNER & HARTZOG, L.L.P., Raleigh, North Carolina, for Appel-
lees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Donald Lucy was denied disability benefits under his employer's disability plan. He then sued two Macsteel Service Center disability plans and their underwriter, Life Insurance Company of North America, claiming a violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq*. The district court granted summary judgment to the defendants. We affirm.

### I.

Lucy contends that he is eligible for disability benefits because of his heart condition. On August 9, 2000, Dr. Marcel E. Zughaib performed a heart catheterization and two-vessel stenting on Lucy. Lucy was released from the hospital the next day; his records indicate that the procedure was a success, and there were no complications. Dr. Zughaib's discharge instructions say only that Lucy is "to follow a low-fat, low-salt diet. He is to refrain from heavy lifting and strenuous activity for one week." J.A. 94. Lucy returned to his job as a sales manager for the Michigan-based Edgcomb Metals Company the week following the procedure. The job required 50 percent sitting, 25 percent standing, and 25 percent walking.

Lucy had two follow-up visits with Dr. Zughaib. On August 21, 2000, Dr. Zughaib observed in his notes that there were no complications from the procedure and that Lucy's EKG was normal. The doctor noted borderline hypertension and prescribed medication. He also mentioned that Lucy complained of fatigue. On September 25, 2000, Dr. Zughaib's notes say that Lucy was walking for an hour four to five times per week. Lucy told the doctor that he experienced some discomfort or pain after walking for 45 minutes and at night while sleeping, but Lucy said the discomfort was not similar to the angina he experienced before the catheterization. Dr. Zughaib described

Lucy's improvement as "dramatic," concluded that he was "doing well," and recommended a follow-up visit in one month. Finally, the doctor noted that Lucy would be moving from Michigan to North Carolina. There is no indication that the residual symptoms Lucy experienced after the catheterization were severe enough to interfere with his largely sedentary work as a sales manager. Nor did Dr. Zughaib advise Lucy to stop working; the only activity restrictions were that Lucy "refrain from heavy lifting and strenuous activity for one week" after his discharge from the hospital. J.A. 94. Lucy continued working in Michigan until October 16, 2000, but he did not make the recommended follow-up visit to Dr. Zughaib that month. He was next seen by a physician, Dr. Eric D. Van Tassel of North Carolina, on January 3, 2001.

Lucy filed a claim for disability benefits on December 5, 2000. The claim was based on conclusory statements from Drs. Zughaib and Van Tassel that Lucy was disabled. The plan administrator denied Lucy's claim after repeatedly explaining to his lawyer that he needed to submit additional evidence to show disability. Lucy then sought to obtain the benefits by filing this ERISA suit. The district court granted summary judgment to the defendants, and Lucy appeals.

## II.

The parties agree that the district court must review the denial of Lucy's benefits de novo because his disability plan does not grant the plan administrator discretion. *See Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 269 (4th Cir. 2002) (concluding that review was de novo because plan language did not give administrator discretion). Thus, the district court owed no deference to the plan administrator's factfinding or interpretation of ambiguous plan provisions. *Reinking v. Philadelphia Amer. Life Ins. Co.*, 910 F.2d 1210, 1213-14 (4th Cir. 1990). We review the district court's grant of summary judgment de novo, applying the same standard as the district court. *Gallagher*, 305 F.3d at 268. Summary judgment is appropriate if there is no genuine issue of material fact, that is, if no reasonable factfinder could find in favor of Lucy. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

An employee is "Totally Disabled" under Lucy's disability plan "if, because of Injury or Sickness . . . he or she is unable to perform all

the substantial and material duties of his or her regular occupation."
J.A. 33. The plan requires "Satisfactory proof of Disability," submit-
ted "at the *Employee's* expense," before it will pay disability benefits.
J.A. 40 (emphasis added). The question, as the district court observed,
is whether Lucy provided the defendants with satisfactory proof that
he is "Totally Disabled" as defined by the plan. J.A. 33. *See also Gal-
lagher*, 305 F.3d at 270 (question presented under similar plan lan-
guage was whether the claimant had submitted "objectively
satisfactory" proof of disability).

Lucy argues that there is a genuine issue of material fact entitling
him to a trial because his treating physicians opined that he is dis-
abled. Lucy first points to his original claim form, signed by Dr.
Zaghaib. The form asks for the dates when Lucy was "continuously
totally disabled (unable to work);" "8/3/00" to "present" is written in
the blanks with no explanation. J.A. 80. The record contains a similar
form signed by Dr. Van Tassel on February 22, 2001, that says Lucy
was disabled from "10/20/2000" to "Indefinite." J.A. 110. Dr. Van
Tassel likewise offered no explanation for his conclusion. Lucy also
points to letters from his treating physicians. Dr. Zughaib's short let-
ter dated June 4, 2001, has two sentences about Lucy's medical his-
tory, one stating that Lucy "had a myocardial infarction as well as
multi-vessel stenting in August of 2000." J.A. 120. Dr. Zughaib then
states that "[b]ased on the above, I believe he should be on complete
disability." J.A. 120. Dr. Zughaib failed to explain what it was about
Lucy's symptoms or condition that rendered him disabled as defined
by the plan. Dr. Van Tassel's April 24, 2001, letter states, with no
substantial explanation, that "he should be considered disabled from
his heart," and "I do not think it is in his medical best interest for him
to work." J.A. 100. Most important, the letter does not indicate that
Dr. Van Tassel considered the plan's definition of disability. In *Gal-
lagher*, when we were faced with similar conclusory opinions of dis-
ability, we held that they did not create a genuine issue of material
fact because the doctors did not indicate whether their opinions were
based on the plan's definition of disability. 305 F.3d at 274. Here, as
in *Gallagher*, Lucy continued to work after his surgery and his condi-
tion improved. *Id.* at 274-75. When a claimant continues to work and
has an improving condition, conclusory statements that he is totally
disabled are not enough to create a genuine issue of material fact. *See
Gallagher*, 305 F.3d at 274-75; *see also Marshall v. E. Carroll Parish*

*Hosp. Serv. Dist.*, 134 F.3d 319, 324 (5th Cir. 1998) (conclusory assertions in the evidence do not create genuine issues of fact); *Weigel v. Target Stores*, 122 F.3d 461, 468-69 (7th Cir. 1997) (same); *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir. 1993) (same); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) (same). Because Lucy's evidence is "not significantly probative," *Liberty Lobby*, 477 U.S. at 249-50, this is not a case where the plan administrator "arbitrarily refuse[d] to credit a claimant's *reliable* evidence," *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) (emphasis added). In sum, without evidence explaining how Lucy's improving heart condition rendered him "unable to perform all the substantial and material duties" of his largely sedentary occupation, no reasonable factfinder could conclude that he was disabled based on the conclusory statements of two physicians.

Lucy also argues that the plan administrator had an obligation to develop evidence indicating that he *could* perform his job. According to Lucy, because the plan administrator failed to develop that evidence, he is now entitled either to summary judgment based on the conclusory statements of his physicians or a remand that requires the plan administrator to develop additional evidence. *See Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1008 (4th Cir. 1985) (indicating in dicta that disability plans may have a duty to develop evidence in certain circumstances); *LeFebre v. Westinghouse Elec. Corp. Mgmt. Disability Benefits Plan*, 747 F.2d 197, 206 (4th Cir. 1984) (same). Assuming a plan administrator has a duty to develop evidence in some circumstances, Lucy properly concedes that "to trigger this duty the claimant must first come forward with evidence of disability." Appellant's Br. at 11. A plan is under no obligation to develop evidence that the claimant is not disabled before denying benefits when (1) the plan imposes a duty upon the claimant to provide proof of disability at the claimant's expense; (2) the claimant is represented by a lawyer; (3) the claimant provides, on the one hand, medical records that indicate that his condition is improving and, on the other hand, conclusory physician statements that he is disabled; and (4) the plan informs the claimant's lawyer that he must submit more evidence of disability. *See LeFebre*, 747 F.2d at 206 (holding that the plan's trustees had no obligation to develop evidence in part because the claimant was represented by a lawyer and the plan's trustees informed the lawyer that they needed additional proof of the claimant's disability).

Because a factfinder could not conclude on this record that Lucy was "Totally Disabled" as defined by the plan and because the plan administrator had no duty to develop evidence relating to disability before denying benefits, summary judgment for the defendants was appropriate. The judgment of the district court is therefore

*AFFIRMED*.