Peter F. SHAHPAZIAN, Plaintiff,

v.

**RELIANCE STANDARD LIFE INSURANCE COMPANY, Defendant.**

No. 1:03–cv–2932–WSD.

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 27, 2005.

Hayes Michael Dever, Friedman Dever & Merlin, Atlanta, GA, for Peter F. Shahpazian.

Alfred Lewis Evans, III, Austin & Sparks, Atlanta, GA, John Thomas Sparks, Joshua Bachrach, Rawle & Henderson, Philadelphia, PA, for Reliance Standard Life Insurance Company.

## ORDER

DUFFEY, District Judge.

This is an action in which Plaintiff Peter Shahpazian ("Plaintiff") seeks long-term disability benefits under an employer benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* It is before the Court on Defendant Reliance Standard Life Insurance Company's ("Reliance Standard") Motion for Summary Judgment [18].

### I. BACKGROUND[1]

Plaintiff was employed as an "Accountant/Principal" with Matson, Driscoll &

---

[1] The Court's statement of the material facts here is limited to the facts necessary to understand the background of the claims decision at issue here, and the stated reasons for the decision. As explained in Section II, *infra,* summary judgment in this case depends on whether Reliance Standard properly interpreted a particular term in the Plan. Thus, unlike ERISA cases where the court must determine whether the administrator's decision is adequately supported by the medical evidence contained within the administrative record, a detailed recitation of the evidence in the administrative record is not necessary or helpful here.

Damico ("MD & D"), an accounting consulting firm that specializes in litigation support work.[2] The physical demands of his position included standing up to 1 hour during an 8–hour workday and walking for under 30 minutes at a time for up to 2 hours a day. As part of his work for MD & D, Plaintiff traveled to the relevant business or insurance company to evaluate insurance claims and determine property and inventory damage by inspecting the site and reviewing paperwork. These on-site inspections frequently required climbing stairs and visiting construction sites and construction trailers in order to inspect and document losses. Traveling constituted 30 to 40% of Plaintiff's time. When Plaintiff traveled, he carried a briefcase with papers weighing 10 to 15 pounds and a laptop computer.

Since July 1994, Plaintiff has been insured under a group long-term disability benefits plan issued to MD & D by Reliance Standard (the "Plan"). The Plan provides for the payment of benefits in the event of "Total Disability," which occurs when "as a result of an Injury or Sickness . . . an Insured cannot perform the material duties of his/her regular occupation. . . ." (RSL 8.)[3]

Plaintiff suffers from peripheral vascular disease which resulted in the amputation of his left leg below the knee in January 2001.[4] In February 2001, Plaintiff applied for long-term disability benefits under the Plan, stating he became totally disabled in early December 2000. Reliance Standard approved Plaintiff's claim in July 2001, stating that "we have determined that you meet the group policy's definition of Total Disability for your occupation." (RSL 219.) Reliance Standard's letter notified Plaintiff that he would receive an initial monthly benefits payment representing benefits due from March 2, 2001 (90 days following the date his disability began) through July 2001. (*Id.*) The letter also stated that periodic objective documentation of his disability status would be required. (*Id.*)

On January 28, 2002, Reliance Standard notified Plaintiff that he was no longer eligible for benefits. (RSL 200–201). It stated that, based on its review of recent medical documents and records from various physicians, including Dr. Gregory Schlegel, Plaintiff's treating physician, it concluded Plaintiff was capable of performing sedentary work and thus could perform his sedentary occupation of Accountant. (*Id.*) Reliance Standard advised Plaintiff that it interpreted "regular occupation" in the Plan's definition of Total Disability to refer to more than his specific position with MD & D: "Please be aware that your own or regular occupation is not your job with a specific employer, it is not your job in a particular work environment, nor is it your speciality in a particular occupational field. In evaluating your eligibility for benefits, we must evaluate your inability to perform your own or regular occupation as it is performed in a typical

---

2. Plaintiff listed his occupation as "Accountant/Principal" on his application for benefits. His employer described his occupation as "property insurance accounting consulting."

3. During the first 90 days following the onset of disability and the first 36 months for which a monthly benefit is payable, an insured is considered Totally Disabled if he/she "cannot perform the material duties of his/her regular occupation." (RSL 8.) After a monthly benefit has been paid for 36 months, the definition of Total Disability narrows, and includes only those insureds who cannot perform the material duties of any occupation. (*Id.*) "Any occupation is one that the Insured's education, training or experience will reasonably allow." (*Id.*)

4. Following the amputation, Plaintiff was fitted with a prosthetic limb.

work setting for any employer in the general economy." (RSL 200.)

Plaintiff challenged Reliance Standard's denial of further benefits, arguing that his job was not sedentary because, *inter alia*, it involved substantial travel and he was required to perform duties involving significant physical activity at locations other than MD & D's office. Reliance Standard rejected this argument and notified Plaintiff by letter dated September 6, 2002, that it had again determined he was no longer totally disabled under the Plan. (RSL 118–20.) In its letter, Reliance Standard stated that a member of its vocational staff had determined that Plaintiff's occupation was a blend of two different occupations— Accountant and Consultant—and that the duties of these occupations were sedentary, which Plaintiff could perform. (*Id.* at 118–19.) In determining Plaintiff's occupation and the duties of the occupation, Reliance Standard relied on the Dictionary of Occupational Titles ("DOT") published by the Department of Labor. (*Id.*) Reliance Standard also noted that its vocational expert had concluded that "travel is an essentially Sedentary activity routinely performed by persons with greater restrictions that [sic] that of the claimant." (RSL 119.) Plaintiff again disagreed with Reliance Standard's decision and argued that his occupation still was incorrectly classified by Reliance Standard. Based on the results of a subsequent independent vocational consultation, Reliance Standard once again concluded that Plaintiff was not totally disabled from his regular occupation. (*Id.* at 172–74.)

Plaintiff appealed the denial of further benefits. On March 11, 2003, Reliance Standard notified Plaintiff that it again concluded that he was not entitled to additional benefits under the Plan. In its letter, Reliance Standard reiterated its position that the Plan covers disabilities from a claimant's "regular occupation" and not his specific job, and that it properly utilized the DOT in determining the material duties of his "regular occupation." (RSL 65.) The letter further emphasized that both Reliance Standard's in-house vocational staff as well as an independent vocational consultant determined that his "regular occupation" was sedentary. (*Id.*)

Reliance Standard's investigation continued. Shortly after denying Plaintiff's appeal, Reliance Standard commissioned a labor market survey to assist it in classifying his occupation. The survey, which classified Plaintiff's occupation as "Forensic Accountant," found variation among the material duties of various employers in Plaintiff's area. (RSL 54–62.) The survey found that the amount of travel required varied from employer to employer, depending on the size of the employer and the amount of the employee's experience in the field. (*Id.* at 56.) The survey further found that the more experienced an individual is, the less likely he or she will be required to do "the physical leg work" and that "some forensic accountants never have to leave their office to perform the occupation." (RSL 61.) Reliance Standard's internal vocational staff reviewed the labor market survey and concluded it supported their earlier assessment.

Reliance Standard provided Plaintiff a copy of the labor market survey. In response, Plaintiff submitted a July 25, 2003 vocational report authored by Sink & Associates, Inc. (the "Sink I Report") (RSL 254–66.) The Report found that travel was a material duty of Plaintiff's position and classified his position as requiring a Light or Medium exertional level, not a Sedentary exertional level. (RSL 264.) The Report also concluded that there does not exist a combination of occupational titles within the DOT that accurately reflects Plaintiff's past regular occupation as it is performed within the workforce or

within his firm. (*Id.*) After obtaining an independent review and comment regarding the Sink I Report by an outside vocational expert, Reliance Standard concluded that the Report inappropriately focused on the functions of Plaintiff's specific job with MD & D, not his "regular occupation" in the general economy. Accordingly, it determined that the Sink I Report did not alter its previous conclusion that Plaintiff was not eligible for benefits under the Plan.[5] This litigation followed.

## II. DISCUSSION

Reliance Standard moves for summary judgment on Plaintiff's claim, arguing that based on the substantial evidence within the administrative record as well as the applicable law, Reliance Standard properly determined Plaintiff was not eligible for further benefits under the Plan.

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir.1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is

inappropriate by designating specific facts showing a genuine issue for trial. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir.1999). The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." *Id.*

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor. *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir.1990). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury...." *Graham*, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." *Herzog*, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Standard of Review

■ The Supreme Court has established three distinct standards for evaluating a plan administrator's decision to deny benefits under a plan governed by ERISA: (1) *de novo* where the plan does not grant the administrator discretion; (2) arbitrary

---

5. Plaintiff attached to his response to Reliance Standard's Motion for Summary Judgment a second report from Sink & Associates, Inc. (the "Sink II Report"). Reliance Standard argues the Court should not consider the Sink II Report because it was not part of the administrative record that was before Reliance Standard when it made its final determination. (Def.'s Reply Br. in Supp. of Mot. for Summ. J. [28] at 1–2.) Plaintiff argues that, although not part of the administrative record, the Report is nonetheless admissible to assist the Court in determining how Reliance Standard reached its decision or call into question the analysis provided by Reliance Standard's experts. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. [22] at 14 n. 4.) The Court has not relied on the Sink II Report in deciding Reliance Standard's Motion for Summary Judgment, and it is not necessary for the Court to resolve this issue.

and capricious where the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where the plan grants the administrator discretion but the administrator operates under a conflict of interest. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1134 (11th Cir.2004).[6] Here, it is undisputed that the Plan documents explicitly grant Reliance Standard discretion to determine benefits eligibility or construe terms of the Plan, and that benefits were paid out of Reliance Standard's own assets. (Def.'s Br. in Supp. of Mot. for Summ. J. [18] at 12.) Accordingly, the parties agree that a heightened arbitrary and capricious standard of review applies in this case. (Def.'s Br. in Supp. of Mot. for Summ. J. at 12; Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. at 16.)

■ The Court's inquiry under the heightened arbitrary and capricious standard of review has three steps. First, the Court must determine whether, under the *de novo* standard of review, Reliance Standard's benefits denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision). *Williams*, 373 F.3d at

1138. If not, then the court's inquiry ends and the decision is affirmed. *Id.* If the administrator's decision is *de-novo* wrong, then the court proceeds to the second step and evaluates whether reasonable grounds supported the decision (hence, review the administrator's decision under the more deferential arbitrary and capricious standard). *Id.* If not, the court's inquiry ends and the decision is reversed. *Id.* If the decision was supported by reasonable grounds, the court must determine the nature of the administrator's conflict of interest and then apply the heightened arbitrary and capricious review to the decision and either affirm or reverse it. *Id.*[7]

## C. Plaintiff's Claim for Benefits

The fundamental issue in this case is the proper interpretation of the term "regular occupation" in the Plan. To qualify for benefits under the Plan, a claimant must demonstrate that he is "Totally Disabled" during the relevant time period. (RSL 8.) A claimant is "Totally Disabled" if he "cannot perform the material duties of his/her regular occupation." (*Id.*) Here, Reliance Standard denied Plaintiff further benefits under the Plan, concluding that the material duties of Plaintiff's "regular occupa-

---

6. The Eleventh Circuit has summarized the standards of review:

> *De novo* review ... offers the highest scrutiny (and the least judicial deference) to the administrator's decision. In fact, we accord *no* deference there, since, no judgment/discretion was exercised in making the determination (*i.e.*, there is no discretion to which we would defer).
>
> In contrast, where the administrator has discretion (*i.e.*, applies his own judgment) in making plan decisions, we review under the arbitrary and capricious standard (which is substantively the same as the "abuse of discretion" standard). We use it to avoid judicial second guessing/intrusion by according the most judicial deference (and thus, the least judicial scrutiny).
>
> Finally, where the administrator has discretion but exercises it under a conflict of

interest, we apply "heightened arbitrary and capricious" review. There we apply a level of deference (and conversely, scrutiny) somewhere between what is applied under the *de novo* and "regular" arbitrary and capricious standards.

*Williams*, 373 F.3d at 1137 (internal citations omitted).

7. As this Court recognized in *Wise v. Hartford Life & Accident Insurance Co.*, "the actual 'steps' in the [heightened arbitrary and capricious] analysis have been articulated in several different ways within this Circuit." 360 F.Supp.2d 1310, 1318 n. 4 (N.D.Ga.2005). Where, as here, the parties agree that the administrator both possessed discretion in denying benefits and suffered from a conflict of interest, an abbreviated three-step analysis is appropriate.

tion" are sedentary in nature and that he is capable of performing sedentary work.

Viewing the facts in the light most favorable to Plaintiff, it is clear that Reliance Standard evaluated Plaintiff's material duties using various occupation descriptions set out in the Department of Labor's DOT, and did not take into account the actual duties of Plaintiff's position with MD & D, which included significant travel and on-site physical inspection.[8] Reliance Standard defends this methodology, arguing that the term "regular occupation" in the Plan refers to Plaintiff's occupation as performed in a typical work setting for any employer in the general economy, not his specific job with MD & D. (Def.'s Br. in Supp. of Mot. for Summ. J. at 18) ("[Reliance Standard] correctly looked to the material duties of [Plaintiff's] occupation, rather than his specific job duties in concluding that he was not totally disabled."). Plaintiff contends that Reliance Standard's denial was arbitrary and capricious because, *inter alia*, Reliance Standard incorrectly relied solely on DOT classifications to determine the material duties of his occupation. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. at 18–25.) Plaintiff argues that, at a minimum, Reliance Standard was required to evaluate the actual duties he performed in his previous position in order to develop a definition of "regular occupation" which was of the same general character as his previous job and required similar skills and training. (*Id.*) Plaintiff argues such an evaluation would have resulted in a definition of "regular occupation" which includes travel and on-site inspection activity as material duties of his occupation. (*Id.*) Thus, the propriety of summary judgment in this case turns on whether Reliance Standard's interpretation of the term "regular occupation" can withstand the application of heightened arbitrary and capricious review.

### 1. *De Novo Review*

■ The Court first considers whether Reliance Standard's interpretation of "regular occupation" is "wrong." *See HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 994 n. 23 (11th Cir.2001) (" 'Wrong' is the label used by our precedent to describe the conclusion a court reaches when, after reviewing the plan documents and disputed terms *de novo*, the court disagrees with the claims administrator's plan interpretation."). In doing so, the Court must consider not only the legal correctness of Reliance Standard's interpretation, but also whether Plaintiff has proposed a reasonable alternative interpretation of the Plan. *Brown v. Blue Cross & Blue Shield of Ala., Inc.*, 898 F.2d 1556, 1570 (11th Cir.1990). If the term "regular occupation" is ambiguous, and Plaintiff establishes a reasonable interpretation, then under *contra proferentem*, the court accepts his interpretation as the correct one. *See Mordecai v. Standard Ins. Co.*, No. 04–14852, 2005 WL 2249896, at * (11th Cir. Sept. 16, 2005) (citing *Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Ala.*, 41 F.3d 1476, 1481 (11th Cir.1995)).[9]

■ The determination of whether the terms of a contract are ambiguous is a question of law to be decided by the court. *See Stewart v. KHD Deutz of Am., Corp.*, 980 F.2d 698, 701 (11th Cir.1993). "When

---

8. That positions such as Plaintiff's involved travel was confirmed by the labor market survey Reliance Standard commissioned.

9. *Mordecai* is an unpublished decision and, in accordance with 11th Circuit Rule 36–2, is not considered binding precedent. 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent."). It is cited for its persuasive value only.

construing the terms of an ERISA policy, ambiguity exists if the policy is susceptible to two or more reasonable interpretations that can fairly be made, and one of these interpretations results in coverage while the other results in exclusion." *Luton v. Prudential Ins. Co. of Am.,* 88 F.Supp.2d 1364, 1370 (S.D.Fla.2000) (citations omitted); *see also Watts v. BellSouth Telecomms., Inc.,* 316 F.3d 1203, 1207–1208 (11th Cir.2003) ("The reasonableness of [a party's interpretation] must be judged from the perspective of the average plan participant.") (citing 29 U.S.C. § 1022(a)).

■ This Court is not the first to address the proper interpretation of the term "regular occupation" as it is used in Reliance Standard employee benefit plans. In *Freling v. Reliance Standard Life Ins. Co.,* 315 F.Supp.2d 1277 (S.D.Fla.2004), the court rejected the interpretation of "regular occupation" proposed by Reliance Standard in this case under a substantially identical employee benefit plan:

> In both denial letters, [Reliance Standard] explained that it was interpreting "regular occupation" to mean the insured's vocation or profession as it typically exists in the general economy, and thus reference to the DOT was reasonable to assist in the determination of [the plaintiff's] duties. A plain reading of the unambiguous terms of the Policy, however, does not suggest such a broad interpretation. Within the applicable provision of the Policy, the term "regular occupation" is modified by the qualifier "his/her." Thus the Policy's plain language supports some particular connection between the insured and the occupation, rather than a "national" standard. This construction is also supported by a plain and fair reading of the subsequent provision defining eligibility for benefits after twenty-four months of payments, when the insured is considered disabled

only if he or she "cannot perform material duties of any occupation." Thus, within the Policy itself, the term occupation is broadened, but only after the insured has already received twenty-four months of payments. The Court therefore disagrees with the interpretation offered by [Reliance Standard], as it would broaden the term "regular occupation" to mean "any" occupation during the elimination period. Such an interpretation is inconsistent with the eligibility requirements after twenty-four months and therefore is incorrect.

315 F.Supp.2d at 1288 (internal citations omitted).

In *Wirries v. Reliance Standard Insurance Co.,* No. CV 01–565–E–MHW, 2005 WL 2138682 (D.Idaho, Sept. 1, 2005), the plaintiff, a vice-president, sought long-term disability benefits under a Reliance Standard plan which defined "total disability" as an inability to perform "the material duties of his/her regular occupation." 2005 WL 2138682 at *2. Reliance Standard concluded the plaintiff was not totally disabled, relying on its medical consultant's assessment that the duties of a "vice-president" listed in the DOT description for that position were sedentary, and that the plaintiff could perform sedentary work. *Id.* at *2–3. The plaintiff argued Reliance Standard's review of her claim was unreasonable because it failed to take into account certain material duties associated with her position, including non-sedentary duties such as travel. *Id.* Reliance Standard alleged, as it does here, that its analysis was proper because the plaintiff was "not entitled to benefits just because she is unable to perform the material duties of her job at [her employer], but only if she is unable to perform the material duties of her occupation as a vice president." *Id.* at *2–4 (citing Reliance Standard's statement that "[t]he difference between an occupation and a job being that an occupation is a

vocation or profession as it typically exists in the general economy whereas a job is a set of specific tasks performed for a specific employer").

The court in *Wirries* rejected the broad interpretation of "regular occupation" proposed by Reliance Standard:

> [T]he Court finds that [Reliance Standard] did not properly interpret the plan language which discussed "regular occupation" when it defined [the plaintiff's] duties solely under the DOT definition because "regular occupation" should have been defined as a position of the same general character as the insured's previous job, requiring similar skills and training, and involving comparable duties. This is not limited to [the plaintiff's] particular job, but to a position of the same general character as the insured's previous job. Without belaboring the point, there can be a tremendous amount of difference between being a vice president for small family-owned corporation engaged in the heating and cooling business, for example, compared to being a vice president for a national corporation such as Microsoft.

2005 WL 2138682 at *5. The court further concluded that, under a proper interpretation of the term "regular occupation," the plaintiff's material duties included duties which are non-sedentary in nature, such as travel, and that Reliance Standard's denial of her claim was therefore arbitrary and capricious. *Id.* at *6.

*Freling* and *Wirries* are just two of the numerous reported decisions regarding the proper scope of "regular occupation" as used in a benefit plan issued by Reliance Standard. Like *Freling* and *Wirries,* the vast majority of these decisions hold that the term "regular occupation" is not susceptible to the broad interpretation proposed by Reliance Standard. *See, e.g., Smith v. Reliance Standard Life Ins. Co.,* 350 F.Supp.2d 993, 999 (S.D.Fla.2004)

(holding that Reliance Standard's broad definition of the plaintiff's "regular occupation" was unreasonable because "it ignores the qualifier 'his/her' in the Policy's language ... and the fact that Reliance's own claim form includes a section entitled "Occupation Analysis" within which a claimant's employer is asked various questions about the 'employee's occupation.' "); *Lasser v. Reliance Standard Life. Ins. Co.,* 344 F.3d 381, 386 (3d Cir.2003) (holding that "[b]oth the purpose of disability insurance and the modifier 'his/her' before 'regular occupation' make clear that 'regular occupation' is the usual work that the insured is actually performing immediately before the onset of disability" and that, "[e]ven were a court not to limit itself exclusively to the claimant's extant duties, that person's 'regular occupation' nonetheless requires some consideration of the nature of the institution at which the claimant was employed.") (citations and internal punctuation omitted); *Ebert v. Reliance Standard Life Ins. Co.,* 171 F.Supp.2d 726, 735 (S.D.Ohio 2001) (holding the administrator's use of the DOT to define the claimant's "regular occupation" was improper because a description of the claimant's actual job duties was available to the administrator and "[t]here is no reason to assume that a national standard set forth in the DOT defines the duties of [the claimant's] regular occupation."); *Conrad v. Reliance Standard Life Ins. Co.,* 292 F.Supp.2d 233, 240–241 (D.Mass.2003) (holding the administrator's decision to deny benefits based on the plaintiff's ability to perform "the material duties of his/her regular occupation" was unreasonable because its vocational experts failed to "examine [the plaintiff's] ability to do any of the specific tasks required by the job [he] held"); *Greene v. Reliance Standard Life Ins. Co.,* No. Civ. A. 7:03–cv–00025, 2004 WL 2634416, at *1–2 (W.D.Va. Oct. 26, 2004) (holding the administrator's use of

the generic definition of his position in the DOT was unreasonable because the generic definition did not include certain activities material to the plaintiff's job with his employer, namely climbing stairs, ladders and catwalks and crawling in and around industrial equipment: "When making an eligibility determination under an ERISA-covered policy, a plan fiduciary must use an 'objectively reasonable' description of the insured's occupation which includes duties comparable to those actually performed by the insured.")

The term "regular occupation" is not defined in the Plan. "Occupation" means "a person's usual or principal work or business, esp. as a means of earning a living; vocation." *Merriam Webster's Collegiate Dictionary,* 10th ed. (1997). This definition suggests that the concept of "occupation" is broader than the specific tasks performed by the employee for his employer, and would appear to support Defendant's interpretation. However, Plaintiff argues, and the Court agrees, that the context of the term "regular occupation" and its use elsewhere in the Plan suggest a relationship between the "occupation" and the specific job held by a claimant. *See, e.g.,* (RSL 8) (stating that "[i]f an insured is employed by you and requires a license for such occupation, the loss of such license for any reason does not in and of itself constitute 'Total Disability' "). This supports Plaintiff's argument that Reliance Standard at least must factor in the actual duties performed by the claimant and others like him performing similar duties in defining his "regular occupation."

In light of the absence of a specific definition of "regular occupation," and considering the parties' competing interpretations, the Court finds the term "regular occupation" is ambiguous. The Court also finds that, judged from the perspective of the average plan participant, the interpretation offered by Plaintiff is reasonable.[10] Applying *contra proferentem,* the Court concludes Plaintiff's interpretation is correct. *Jones v. Am. Gen. Life and Acc. Ins. Co.,* 370 F.3d 1065, 1070 (11th Cir. 2004) ("[W]e apply the doctrine of *contra proferentem* to resolve ambiguities in ERISA-governed plans...."); *Lee v. Blue Cross/Blue Shield of Ala.,* 10 F.3d 1547, 1551 (11th Cir.1994) ("Having determined that the plan is ambiguous, we hold that application of the rule of *contra proferentem* is appropriate in resolving ambiguities in insurance contracts regulated by ERISA.").

Notwithstanding the numerous decisions holding that its broad interpretation is not legally correct, Reliance Standard contends the weight of case law is in its favor, relying primarily on the Fourth Circuit's decision in *Gallagher v. Reliance Standard Life Ins. Co.,* 305 F.3d 264 (4th Cir.2002). The employee benefit plan at issue in *Gallagher* defined total disability as the inability to "perform each and every material duty of his/her regular occupation" during the relevant period. 305 F.3d at 270. The administrator denied the plaintiff's claim for benefits, concluding that he failed to show he was unable to perform each and every material duty of his occupation as reflected in the DOT description for his position. *Id.* at 272. The plaintiff argued this decision was arbitrary and capricious because the material duties listed in the DOT description did not match his

---

10. Reliance Standard argues, in conclusory fashion, that Plaintiff's interpretation is not reasonable because it is contrary to the plain language of the Plan. (Def.'s Br. in Supp. of Mot. for Summ. J. at 21–22.) This argument is not persuasive. Both parties' interpretations rely on Plan language-they simply differ in the manner in which that language is to be interpreted. Reliance Standard has not demonstrated, nor does the Court conclude, that Plaintiff's interpretation is inconsistent with any other language or provision of the Plan.

actual job duties; specifically, the plaintiff alleged the DOT description omitted his position's travel requirement, which both parties agreed the plaintiff could no longer perform. *Id.* The court rejected this argument, holding that the omission of the travel requirement did not render the administrator's decision arbitrary and capricious. *Id.* at 272–73. The court reasoned that "if he fails to demonstrate that he is unable to perform some duties that do not require travel, establishing an inability to travel would not save his claim." *Id.* at 272.[11]

Although the court in *Gallagher* upheld the administrator's decision, it did not purport to endorse the broad interpretation of "regular occupation" proposed by Reliance Standard. Reliance Standard cannot rely on a case interpreting a plan which is very different from the plan that was at issue in *Gallagher*. The plan in *Gallagher* required the plaintiff to demonstrate he was unable to perform *"each and every"* material duty of his occupation. *Id.* at 270 (emphasis added). The court concluded that the duties listed in the DOT description were comparable to the plaintiff's actual job duties, and that the plaintiff had failed to demonstrate he was unable to perform "each and every" one of these duties. *Id.* at 272–73. Thus, the omission of the travel requirement was inconsequential, because even if this duty was included in the DOT description used by the administrator, the plaintiff had still failed to demonstrate he was unable to perform "each and every" material duty. *See id.*

The *Gallagher* decision does not apply here, where Reliance Standard does not argue that the Plan requires Plaintiff to show he is unable to perform "each and every" material duty. Further, in comparing the actual duties of the plaintiff's job and the DOT description used by Reliance Standard, the *Gallagher* court's opinion impliedly recognizes that the description of duties used by the administrator should reflect the actual duties of the claimant's specific job. *See id.* at 272–73. To the extent that *Gallagher* is relevant, it undermines, rather than supports, Reliance Standard's interpretation of the Plan here. *See Ranson v. Unum Life Ins. Co. of Am.,* 250 F.Supp.2d 649, 656–57 (E.D.Va.2003) (citing *Gallagher* for the proposition that "the review of [the administrator's] benefits denial decision appropriately begins with a precise and detailed listing of the essential duties of [the claimant's] position at [his employer]" and that "[t]his is so because the Plan definition for disability is stated in terms of the claimant's occupation"); *Wirries,* 2005 WL 2138682 at *5–6 ("[A] close reading of the *Gallagher* opinion does not support the expansive view [Reliance Standard] wants to place on it.").[12] It was important in *Gallagher* that the plaintiff did not show that the duties listed in the DOT description differed from his actual duties. The court was explicit on this issue: "Gallagher argues that the

---

11. Thus, the court in *Gallagher* expressed no opinion on whether the plaintiff's inability to travel would impact the disability determination because, under the specific definition of disability in the policy at issue, if the plaintiff failed to demonstrate he was unable to perform even one of his material duties, he was not disabled and not entitled to benefits.

12. Reliance Standard also relies on several district court opinions distinguishing between an "occupation" and the employee's specific

job. (Def.'s Br. in Supp. of Mot. for Summ. J. at 16–18) (citing *Ehrensaft v. Dimension Works Inc. Long Term Disability Plan,* 120 F.Supp.2d 1253, 1258–59 (D.Nev.2000), *Ceasar v. Hartford Life & Acc. Ins. Co.,* 947 F.Supp. 204 (D.S.C.1996), and *Hanser v. Ralston Purina Co.,* 821 F.Supp. 473, 478 (E.D.Mich.1993)). These cases did not involve the specific plan at issue here, and are against the weight of case authority cited above.

material duties set forth in the DOT description for Gallagher's occupation 'do not match' his actual job and, thus, [Reliance Standard's] analysis is 'fatally flawed.' ... He fails, however, to point to any specific duty in the DOT description that was in some way different from his actual job duties." *Id.* at 272.

Based on its review of the Plan and the rest of the administrative record in this case, and bolstered by the weight of case authority addressing this issue, the Court concludes, for the purpose of summary judgment only, that Reliance Standard's interpretation of the term "regular occupation" in the Plan is *de-novo* wrong. Accordingly, the Court will proceed to the next step in the heightened arbitrary and capricious review and assess whether Reliance Standard's interpretation, although *de-novo* wrong, was supported by reasonable grounds.

### 2. *Reasonableness of Reliance Standard's Interpretation*

■ As an initial matter, the Court finds that an interpretation of "regular occupation" to mean something more than the specific job performed for the claimant's specific employer is reasonable. As stated above, this interpretation finds support in the plain-meaning definition of the term "occupation." In addition, the Plan elsewhere distinguishes between an "occupation" and a claimant's specific job. For instance, the Plan states that a claimant is deemed to be "Actively at Work" when he or she is "actually performing on a Full-time basis the material duties pertaining to his/her *job* in the place where and the manner in which the *job* is normally performed." (RSL 7) (emphasis added).

However, the interpretation and methodology which Reliance Standard used in evaluating Plaintiff's claim, and which it seeks to defend in this case, is more extreme. Instead of developing a definition "regular occupation" which accounted for the material duties of Plaintiff's position, Reliance Standard seized upon one or more occupation descriptions in the DOT, despite the fact that these descriptions, individually or when blended, did not reflect certain material duties of Plaintiff's position with MD & D or forensic accountants generally. This enslaved dependence upon the DOT is unreasonable and, in a case like this, creates a risk of unjust results.[13] Reliance Standard's own labor market survey disclosed that Plaintiff's occupation of "Forensic Accountant" involved varied duties and varied travel requirements even among employers in Plaintiff's geographic area of employment. Yet, the definition of "regular occupation" proposed by Reliance Standard did not take into account these variations. Its rigid reliance on the generic DOT descriptions, even if multiple descriptions are blended, requires, in circumstances like these, pounding square pegs into round holes. It does not make legal or practical sense here to rely on the DOT descriptions and, based on the decisions of the courts cited above, one must ask whether the DOT descriptions are practically or legally viable in a dynamic and diverse labor market such as exists in this urban community or elsewhere.

### 3. *Application of Heightened Arbitrary & Capricious Review*

■ Even assuming Reliance Standard's interpretation is reasonable, sum-

---

13. Put another way, while it would be unreasonable for a claimant to insist that his "regular occupation" includes every specific task his employer requires of him, it is equally unreasonable for the administrator to ignore the material duties of the claimant's position in determining his "regular occupation." *See Conrad,* 292 F.Supp.2d at 240–241; *Greene,* 2004 WL 2634416 at *1–2.

mary judgment is not warranted. In *Williams v. BellSouth Telecommunications, Inc.,* the Eleventh Circuit summarized the process to be used by district courts in applying the heightened arbitrary and capricious standard of review to an administrator's plan interpretations:

Our circuit ... has incorporated a two step, burden-shifting, approach: (1) The claimant shows that the administrator of a discretion-vesting plan is conflicted. (2) The administrator then proves that his plan interpretation was not tainted by self-interest. A wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the administrator at the expense of the claimant. But, if the administrator can demonstrate a routine practice or give other plausible justifications—such as benefitting the interests of other beneficiaries—judicial deference to it may be granted, since even a conflicted administrator should receive deference when he demonstrates that he is exercising discretion among choices which reasonably may be considered to be in the interests of the participants and beneficiaries.

*Williams,* 373 F.3d at 1138 (internal citations, quotations and punctuation omitted); *see also Hamall–Desai v. Fortis Benefits Ins. Co.,* 370 F.Supp.2d 1283, 1310 (N.D.Ga.2004) ("A wrong but reasonable decision is considered arbitrary and capricious if it 'advances the conflicting interest of the fiduciary at the expense of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries.' ") (citing *Brown,* 898 F.2d at 1566–67).

Reliance Standard does not adequately address this third and final step of the heightened arbitrary and capricious review. It does not refer to the burden-shifting framework described in *Williams,* nor does it argue that its decision reflected a routine practice or provide other plausible justifications for its decision, for example, by demonstrating that its decision benefitted the interests of other beneficiaries. Reliance Standard argues only that "[t]here is no evidence of self-dealing on the part of [Reliance Standard]," citing the fact that it accepted and considered evidence submitted by Plaintiff after he had already exhausted his administrative appeals. (Def.'s Br. in Supp. of Mot. for Summ. J. at 21.)

Faced with a conclusory and unsupported argument regarding the third aspect of heightened and arbitrary capricious review, the Court in *Hamall–Desai* held that the administrator failed to carry its burden at summary judgment:

In its Motion for Summary Judgment, Fortis gives little attention to meeting its burden of showing its decision to deny Desai's [long-term disability benefits] claim was not tainted by self-interest. In fact, Fortis shifts the burden to Desai, stating that "there is no evidence that Fortis Benefits' determination that plaintiff was not entitled to benefits was motivated by anything other than the full and fair review of the records that were provided to it.".... In its reply brief, Fortis provided but a shred of evidence in support of its contention that it had not acted in its self-interest, simply stating that Desai's accusation that Fortis made its decision because of financial incentive was "unsupported by the record" and adding that it had continued its investigation of Desai's claim beyond the 120th day of receipt of her second appeal, evincing Fortis' effort to provide a full and fair review of the claim. It is unclear to the court how Fortis' continued investigation disposes of the issue of whether it acted in its self-interest, especially considering that during this period it supplemented the record with evidence supporting a deni-

al. The court finds, and the parties agree, that Fortis was operating under a conflict of interest. Fortis' burden to show it was not acting in its self-interest has not been satisfied.

*Hamall–Desai,* 370 F.Supp.2d at 1310–11. In this case, Reliance Standard similarly fails to demonstrate its decision was not tainted by self-interest, and its arguments concerning the leeway shown to Plaintiff during the review process are equally unavailing, especially considering that, like the administrator in *Hamall–Desai,* Reliance Standard continued to supplement the record to support its denial.

Because the Court finds, for the purpose of summary judgment, that Reliance Standard's interpretation of the term "regular occupation" is *de-novo* wrong, as well as unreasonable, and that Reliance Standard has failed to carry its burden to prove that its interpretation, even if reasonable, was not tainted by self-interest, Reliance Standard's Motion for Summary Judgment is DENIED.[14]

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Reliance Standard's Motion for Summary Judgment is **DENIED.**

**IT IS FURTHER ORDERED** that the parties are to confer to discuss whether this case should proceed to a bench trial on the merits or whether, in light of the Court's ruling regarding the proper interpretation of the term "regular occupation" in the Plan, a remand to the Plan administrator is appropriate. The parties shall submit to the Court on or before October 21, 2005, a statement of their position(s) on this issue. If the parties wish to submit memoranda of law in support of their positions, they may do so, but such memoranda shall not exceed five (5) pages. No response will be permitted.

---

14. In addition to its primary argument concerning the proper interpretation of "regular occupation" under the Plan, Reliance Standard proposes two alternative grounds for affirming its decision to deny benefits. First, Reliance Standard argues that, even accepting Plaintiff's interpretation of "regular occupation" to refer to his specific job with MD & D, travel is not a material duty of his job. (Def.'s Br. in Supp. of Mot. for Summ. J. at 18–20.) In particular, Reliance Standard argues Plaintiff's testimony that, as a manager, he could have reduced the amount of traveling he did and his subsequent part-time work for MD & D supervising other staff members shows that travel is not a material duty of his position. (*Id.*) Second, Reliance Standard argues there is "a question as to whether [Plaintiff] was limited in his ability to travel." (*Id.* at 20.) To support this second argument, Plaintiff cites testimony from an MD & D official that although Plaintiff had returned to perform some duties of his previous position with MD & D, the duties of that position had not been changed and it still involved "traveling, driving by a car, climbing ladders at plants, etc." (*Id.*) Neither of these arguments is persuasive, and Reliance Standard has not offered sufficient evidence in support of these arguments to demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.