[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 5, 2007
THOMAS K. KAHN
CLERK

No. 06-15180

_____

D. C. Docket No. 05-03052-CV-TWT-1

CLAUDE J. STILTZ,

Plaintiff-Appellant,

versus

METROPOLITAN LIFE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(June 5, 2007)**

Before PRYOR, KRAVITCH and ALARCON,[*] Circuit Judges.

PER CURIAM:

_____

[*] Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Claude J. Stiltz appeals the summary judgment against his suit for long-term disability benefits under the Employment Retirement Income and Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq. Stiltz argues that the plan administrator, Metropolitan Life Insurance Company (MetLife), acted arbitrarily and capriciously when it denied his claim for benefits. MetLife responds that its decision to terminate Stiltz's disability benefits based on a functional capacity evaluation and reviews by two independent physicians was not wrong. We affirm.

## I. BACKGROUND

Stiltz, a senior manager for a consulting firm, received disability insurance through his employer, who obtained a group policy from MetLife. In November 2001, Stiltz became ill and was hospitalized after a business trip to India. In December, Stiltz applied for and eventually received short-term and long-term disability benefits from MetLife.

In the following months, Stiltz's treating physician, Dr. Anthony Captain, made diagnoses that included fibromyalgia, chronic fatigue syndrome, and irritable bowel syndrome. By October 2002, Dr. Captain's notes remarked that Stiltz was "doing well," but that same month, Dr. Captain submitted to MetLife a statement regarding Stiltz's claim, and stated that Stiltz could only work less than three to four hours per day. Dr. Captain's office notes from early 2003 reflect that

2

Stiltz was reporting complaints of chronic pain and an inability to function for more than an hour at a time. Through 2004, Stiltz continued to see Dr. Captain and various specialists for ongoing treatment of his various complaints.

In May 2003, MetLife referred Stiltz's claim for an independent physician review. Dr. Tracey Schmidt reviewed Stiltz's medical records and concluded that his file contained only subjective complaints of fatigue and lacked "sufficient medical [evidence] to support objective evidence of physical functional capacity impairment to any occupation." Dr. Schmidt also remarked that the limitations Stiltz reported to Dr. Captain were inconsistent with Stiltz's statements on his application for benefits that he regularly coached soccer, performed housework and yardwork, and helped his teenaged daughters with their studies. In September 2003, MetLife asked Dr. Schmidt to review Stiltz's file again. Dr. Schmidt reviewed newly submitted medical records and again concluded that the file lacked objective evidence of Stiltz's physical impairment.

On October 6, 2003, Dr. Captain wrote to Dr. Schmidt and objected to her conclusions. He asserted that Stiltz's tender point joint tenderness was objective evidence of his diagnosis of fibromyalgia and stated that Stiltz could not sustain activity for more than an hour at a time. Dr. Schmidt undertook a third review of Stiltz's file for MetLife and concluded that her opinion had not changed. Dr.

3

Schmidt spoke with Dr. Captain on November 3 and encouraged Dr. Captain to substantiate Stiltz's subjective complaints of inability to work and concentrate by submitting the results of a mental status examination and a functional capacity evaluation.

On February 4, 2004, Stiltz underwent a functional capacity evaluation. The report concluded, based on a series of tests evaluating Stiltz's actual ability to sit, stand, walk, climb stairs, stoop, reach, squat, kneel, and lift, that Stiltz was capable of performing a light-duty occupation, as defined in the Department of Labor's Dictionary of Occupational Titles, for an eight-hour workday. The evaluation reflected that, in an eight-hour day, Stiltz could sit, walk, stand, and climb "frequently," that is, one-third to two-thirds of the time.

On March 15, Dr. Schmidt reviewed Stiltz's file for a fourth time. She noted that a job description submitted by Stiltz's employer included sitting three hours, standing three hours, walking three hours, and occasionally lifting and carrying up to 20 pounds. Dr. Schmidt concluded that this was a "light" occupation and, based on the functional capacity evaluation, the file lacked objective evidence of a physical functional capacity impairment to a full-time light-duty occupation. On April 27, 2004, MetLife completed its review of Stiltz's claim and terminated benefits. Stiltz appealed.

4

During the appeal process, MetLife submitted Stiltz's file to a second independent physician for review. On January 4, 2005, after reviewing Stiltz's file, Dr. Dennis Gordan concluded that Stiltz was capable of light-duty work. Dr. Gordan criticized Dr. Captain for "giving undue weight to symptoms," and concluded that "[Stiltz] has overreported symptoms and [Dr. Captain] has overrated symptoms." Dr. Gordan stated that the functional capacity evaluation, with its "empiric basis," gave a better estimate of Stiltz's actual capabilities. On January 5, MetLife upheld its decision to deny benefits. MetLife agreed to conduct one further review.

On September 12, 2005, MetLife again concluded that Stiltz was not entitled to benefits. MetLife relied on the definition in the Dictionary of Occupational Titles to conclude that, despite Stiltz's insistence that his actual job requirements were more than light, his "own occupation" required only light exertional capacity. The functional capacity evaluation supported the conclusion that Stiltz could perform a "light" occupation, and no objective findings in the medical file precluded this finding.

Stiltz sued MetLife in Georgia state court. After removing this action to federal court, MetLife moved for summary judgment. The district court granted that motion and denied Stiltz's cross-motion for summary judgment.

5

## II. STANDARD OF REVIEW

We review a summary judgment <u>de novo</u>, applying the same legal standards as the district court. <u>Williams v. Bellsouth Telecomms., Inc.</u>, 373 F.3d 1132, 1134 (11th Cir. 2004). The review of a denial of benefits in an ERISA case follows a series of steps. "At each step, the court makes a determination that results in either the progression to the next step or the end of the inquiry." <u>Tippitt v. Reliance Standard Life Ins. Co.</u>, 457 F.3d 1227, 1232 (11th Cir. 2006). The six steps are as follows:

(1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" ( i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "<u>de novo</u> wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "<u>de novo</u> wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

Williams, 373 F.3d at 1138 (footnotes omitted).

### III. DISCUSSION

Stiltz makes two basic arguments about MetLife's decision to deny benefits. First, he argues that MetLife erred when it interpreted the plan to define his "own occupation" as a light-duty occupation. Second, he argues that MetLife erred when it determined that he was not disabled by requiring him to present objective medical evidence and improperly weighing the evidence in his file. Both arguments fail; we discuss each in turn.

*A. The Conclusion of MetLife That Stiltz's "Own Occupation" Was Light-Duty Was Not De Novo Wrong.*

Stiltz argues that MetLife erred when it interpreted plan language regarding his occupation. The plan defines disability as "unable to perform the material and substantial duties of your Own Occupation," and defines "own occupation" as

> the activity that you regularly perform and that serves as your source of income. It is not limited to the specific position you held with Your Employer. It may be a similar activity that could be performed with your Employer or any other employer.

MetLife applied this language and relied on the Dictionary of Occupational Titles to conclude that Stiltz's own occupation involved light-duty work. Stiltz

7

contends that his occupation in fact required him to do more than light-duty work, including lifting 75 pounds, carrying 25 pounds, traveling to Washington, D.C. weekly, traveling overseas occasionally, and working 60 to 70 hours a week. We agree with MetLife that the actual requirements of Stiltz's most recent position are not controlling.

Unlike the plans reviewed in the decision upon which Stiltz relies, the MetLife plan defines the term "occupation." Cf. Shahpazian v. Reliance Standard Life Ins. Co., 388 F. Supp. 2d 1368, 1377 (N.D. Ga. 2005). The clear plan language allowed MetLife to look beyond the requirements of "the specific position" Stiltz held. MetLife was entitled to rely on the Dictionary of Occupational Titles, which defines the occupations of "manager" and "consultant" as sedentary, and consider the job description provided by Stiltz's employer, which described Stiltz's job as requiring three hours each of sitting, standing, and walking each day. When a job involves exerting negligible force but requires a significant amount of walking or standing, the "light" classification, rather than "sedentary," is appropriate. Dictionary of Occupational Titles app. C, § IV.

The functional capacity evaluation reflected that Stiltz could perform a light-duty occupation as defined by the Dictionary of Occupational Titles, and that definition was consistent with the general job description provided by Stiltz's

employer. The functional capacity evaluation concluded that Stiltz could work an eight-hour day and that he could sit, walk, and stand "frequently," that is, one-third to two-thirds of the time. The conclusion of MetLife, based on its interpretation of the plan and the functional capacity evaluation, that Stiltz could perform his light-duty occupation was not de novo wrong.

### B. The Conclusion of MetLife That Stiltz Was Not Disabled Was Not De Novo Wrong.

Stiltz criticizes the factual determination by MetLife on two grounds. First, he argues that MetLife improperly required him to submit objective medical evidence. Second, Stiltz argues that MetLife improperly considered the evidence in Stiltz's file, giving too much weight to the results of the functional capacity evaluation and not enough weight to Stiltz's reported limitations and the payment of benefits by MetLife for nearly two years. Both arguments fail.

Stiltz asserts that the plan does not require a claimant to provide objective medical evidence in support of his claim. We agree, but the record does not reveal that MetLife denied benefits based on a failure to provide objective evidence of Stiltz's ailments. To borrow the words of our sister circuit, "MetLife's communications with [Stiltz] support its contention that it was requesting only substantiation of the extent of [Stiltz]'s disability and not an impossible level of

9

objective proof that [he] suffered from fibromyalgia." Pralutsky v. Metro. Life Ins. Co., 435 F.3d 833, 839 (8th Cir. 2006). MetLife's final decision considered both the subjective and the objective evidence in Stiltz's file, and MetLife found that the objective evidence in the functional capacity evaluation was the more reliable evidence of Stiltz's ability to work.

Stiltz argues that MetLife's determination placed too much weight on the results of the functional capacity evaluation, but we disagree. MetLife never discredited Stiltz's subjective complaints of pain and fatigue. Cf. Hawkins v. First Union Corp. Long-Term Disability Plan, 326 F.3d 914, 919 (7th Cir. 2003). MetLife properly concerned itself with whether Stiltz could perform the material and substantial duties of his occupation. The functional capacity evaluation reflected that Stiltz could perform light-duty work for an eight-hour day, and it was not the only evidence that Stiltz was not disabled. Stiltz's reported non-work activities, which included coaching a youth soccer team, participating on a walking team, and performing housework and yardwork, were also inconsistent with his reported work limitations. Stiltz did not bolster his file with the results of a second functional capacity evaluation undertaken on a "bad day" or any other evidence that the evaluation was not an accurate measurement of his abilities. Cf. Donovan v. Eaton Corp., Long Term Disability Plan, 462 F.3d 321, 327-28 (4th

10

Cir. 2006); see Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir. 1998) (ERISA claimant has burden of establishing disability).

Stiltz also argues that MetLife's payment of disability benefits for nearly two years should weigh against its decision to discontinue benefits. We have never held that such a fact is a relevant consideration when we review the denial of benefits under ERISA. Even if we were to consider the previous payment of benefits by MetLife, it would not change our conclusion. The record reflects that many of Stiltz's wide-ranging complaints, such as irritable bowel symptoms and a sleep disorder, were successfully treated after he first filed for disability benefits. That MetLife allowed Stiltz so much time to produce evidence of his inability to work and that he still failed to do so supports the determination by MetLife.

## IV. CONCLUSION

The summary judgment for MetLife and against Stiltz's complaint is **AFFIRMED.**